### UNITED STATES v. O. G. HEMPSTEAD & SON.

(Circuit Court, E. D. Pennsylvania. March 14, 1907.)

#### No. 42 (1,729).

**1. CUSTOMS DUTIES—CLASSIFICATION—MAGNESITE BRICK—FIRE BRICK.**

The phrase "fire brick," in Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 87, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1632], is a well-known commercial designation, which means brick made from fire clay, and therefore does not include magnesite brick.

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.] ·

**2. EVIDENCE—OFFICIAL REPORTS—ADMISSIBILITY.**

An official report by a government chemist, which was made at the request of the Board of General Appraisers, and related to merchandise involved in a case pending before the board, *held* incompetent because ex parte, not under oath and not subject to cross-examination.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 6,067 (T. D. 26,475), relating to merchandise imported at the port of Philadelphia.

A part of the record returned by the board to the Circuit Court consisted of an official chemist's report, made in the laboratory connected with the office of the United States Appraiser at the port of New York, which was prepared in accordance with a request made by the Board of General Appraisers to said appraiser.

J. Whitaker Thompson, U. S. Atty., and Walter C. Douglas, Jr., Asst. U. S. Atty.

J. Stuart Tompkins, for importers.

J. B. McPHERSON, District Judge. The article in controversy is plain magnesite brick weighing less than 10 pounds each, and the question for decision is, under what clause of the tariff act of 1897 the duty should be imposed. Act July 24, 1897, c. 11, § 1, Schedule B, par. 87, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1632]. The collector classified the importation under clause 3, as "brick, other than fire brick, not glazed, enameled, painted, vitrified, ornamented or decorated in any manner," and assessed the duty at 25 per cent. ad valorem. The importer protested, testimony was taken by the Board of General Appraisers, and the decision of the board sustained the protest, and imposed a duty of $1.25 per ton, under the first clause of paragraph 87, which imposes a duty of that amount upon "fire brick weighing not more than 10 pounds each, not glazed, enameled, ornamented or decorated in any manner." The opinion of the board is G. A. 6,067, and is reported in Treasury Decisions, 26,475. From this ruling the collector appealed; and, further testimony having been taken under the order of the Circuit Court, this, with the testimony that was before the board, has been duly considered.

It will be observed that the decision of the board was apparently much influenced by a communication from R. W. Moore, a chemist in New York, which was evidently regarded by the board as competent evidence, although it was purely an ex parte statement, not under oath, and not subject to cross-examination by the government. It need scarcely be said that Mr. Moore's letter was incompetent, and should not have been considered. I have laid it aside entirely, and base my conclusion solely upon the testimony that was taken in the regular way before the board and under the order of the Circuit Court. This testimony I shall not discuss in detail. It is enough, I think, to say that, as the decision of the case evidently turns upon a question of fact, the government's witnesses have satisfied me beyond doubt that "fire brick" is a phrase with a well-known commercial designation in the trade, that it means brick made from fire clay, and that magnesite brick are not commercially understood as being included within its scope. On the contrary, when magnesite brick are wanted, they are always ordered eo nomine, and never as "fire brick." The testimony establishes these facts clearly, and the result is that the commercial meaning of the word, according to well established rules, must prevail. Maddock v. Magone, 152 U. S. 368, 14 Sup. Ct. 588, 38 L. Ed. 482. In that case the Supreme Court of the United States said, upon page 371 of 152 U. S., page 589 of 14 Sup. Ct. (38 L. Ed. 482):

"In Cadwalader v. Zeh, 151 U. S. 171, 176, 14 Sup. Ct. 288, 38 L. Ed. 115, it was said that 'it has long been a settled rule of interpretation of the statutes imposing duties on imports that if words used therein to designate particular kinds or classes of goods have a well-known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention; and that it is only when no commercial meaning is called for or proved that the common meaning of the words is to be adopted.' But it is also true that, as observed by Mr. Chief Justice Waite in Swan v. Arthur, 103 U. S. 597, 598, 26 L. Ed. 525: 'While tariff acts are generally to be construed according to the commercial understanding of the terms employed, language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown.'

"The inquiry was whether, in a commercial sense, the articles were so known, trafficked in, and used, under the denomination of toys, that Congress, in the use of the particular word, should be presumed to have had that designation in mind as covering such articles.

"Necessarily the commercial designation is the result of established usage in commerce and trade, and such usage, to affect a general enactment, must be definite, uniform, and general, and not partial, local, or personal."

The decision of the Board of General Appraisers is reversed, and the classification of the collector is affirmed.