### The Pantasote Co. *v.* United States (No. 38).[1]

Millboards.

> Millboards made of refuse paper and bent or curved in form for use in ceiling cars are not dutiable under paragraph 402, tariff act 1897, but were dutiable as manufactures of paper under paragraph 407 of said act.

#### United States Court of Customs Appeals, October 18, 1910.

Transferred from the United States Circuit Court, Southern District of New York, Abstract 22034 (T. D. 30086).

[Affirmed.]

*Joseph G. Kammerlohr* (*John Giblon Duffy* on the brief) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Martin A. Baldwin* on the brief), for the United States.

Before Montgomery, Hunt, Smith, Barber, and De Vries, Judges.

De Vries, Judge, delivered the opinion of the court:

This case comes up by transfer from the United States Circuit Court for the Southern District of New York.

This merchandise, described in the appraiser's return as millboards, is imported, first, rectangular sheets or boards, 2 feet by 4 to 6 feet by 12; second, similar boards glued or joined together to make greater dimension of surface; third, similar boards bent or curved to a concave form. They were assessed for duty as manufactures of paper at 35 per cent ad valorem under the provisions of paragraph 407 of the tariff act of 1897. The importer claims they are properly

---

[1] Reported in T. D. 31008 (19 Treas. Dec., 1070).

dutiable under paragraph 402 of the same act at the rate of 25 per cent ad valorem, as paper hangings or paper not specially provided for.

The board followed in part another of its decisions, the record of which does not accompany this record, and held the flat sheets dutiable as paper and the curved sheets dutiable as manufactures of pulp, and gave decision accordingly. The importer appeals from the latter holding only.

But one witness appeared at the hearing. He was the examiner at the appraiser's department. He passed the merchandise and was called by the importers as their witness.

The issues presented in this case involve several questions, to wit, the substance from which the merchandise is manufactured, the processes of manufacture through which the articles as imported has gone from the raw material to the imported state, the subsequent use of the merchandise as imported and its ready fitness for such use in the condition imported, and name, if any, by which it was generally uniformly known in trade and commerce as imported prior to July 24, 1897.

Evidently the examiner alone who testified as to having passed the goods originally gave all the information upon the subject disclosed by the record. When asked at the hearing of what the merchandise was made, he testified it was made from "refuse paper-refuse paper stock; usually of a cheap refuse paper or of rope," and when asked how the curved articles were fashioned he testified the only information he had on the subject was hearsay gleaned from the importer. When asked whether he had any information as to whether or not the bent boards were in shape for final use as imported, he said he had no definite knowledge on that subject; and to the question whether or not they had yet to be cut to sizes, he said "they seem to be appropriate for use in the cars."

As to the flat goods, the testimony upon which the board ruled does not accompany this record. Though that portion of the decision was not appealed, we are unable to say how far that record supported the other findings of the board in its absence.

While the testimony in this case, shown by this record, is meager and unsatisfactory, the conclusions of the board are presumably correct. The presumption of law attending official action supports that conclusion.

In United States v. Schering (123 Fed. Rep., 65) the Circuit Court of Appeals for the Second Circuit, in laying down that familiar principle of law, stated its application to customs laws in language as follows:

Where the classification of merchandise depends upon the existence of specified descriptive characteristics, it is to be presumed in favor of a correct classification that those characteristics were found by the officers of customs. These officers are

selected by law for the express purpose of deciding these questions. They are empowered and required to pronounce a judgment in the case, and the conduct, management, and operation of the revenue system seem to require that their decisions should carry with them the presumption of correctness. United States *v.* Rosenwald (67 Fed. Rep., 323); Arthur *v.* Unkart (96 U. S., 122); Muser *v.* Magone (155 U. S., 240).

We have heretofore recited the issuable facts in this case. Opportunity was offered the importer to introduce testimony establishing in his favor any of these issuable facts. The only evidence introduced was that of the examiner, which tends rather to support the issuable facts as found by the board than to controvert them in this case.

Basing our decision solely upon this ground, the decision of the Board of General Appraisers is *affirmed.*