UNITED STATES *v.* PERKINS (No. 155).[1]

1. POWER OF BOARD OF APPRAISERS TO REVIEW FACTS.

The power of a Board of General Appraisers to review on appeal a finding of facts is not limited in its exercise to cases where new and additional facts or exhibits are there submitted, but embraces the case in its entirety, with or without new and additional facts or exhibits appearing; and so the finding of a collector is not conclusive against an importer when, on appeal to a Board of General Appraisers, precisely the same case is there presented for decision that was presented at the port of entry.

2. GLOVES.

The Board of General Appraisers having found the gloves in this consignment were not embroidered with more than three single strands or cords, and the Government relying here solely on a contention that the board exceeded its authority in not adhering to a different finding by the collector, the board on the contrary possessing the authority so denied, its finding is affirmed.

United States Court of Customs Appeals, March 20, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 22027 (T. D. 30086).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for the appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

HUNT, Judge, delivered the opinion of the court:

In August, 1908, Perkins, Van Bergen & Co., appellee here, imported certain gloves. The local appraiser returned them as women's

---

[1] Reported in T. D. 31430 (20 Treas. Dec., 529).

kid gloves under 14 inches, embroidered. Duty was assessed at the rate of $3.40 per dozen pairs, under paragraphs 442 and 445 of the act of July 24, 1897. The report of the deputy appraiser, which appears in the record with the return of the appraiser, discloses that he advised 40 cents per dozen pairs additional duty because the gloves were embroidered with more than three single strands or cords, such additional duty being assessed under the above-cited paragraph 445, which imposes cumulative duties of 40 cents per dozen pairs "on all gloves stitched or embroidered with more than three single strands or cords."

The importers protested and sought a review upon the ground that the cumulative assessment was. illegal, in that the gloves were not stitched or embroidered with more than three single strands or cords.

At the hearing had by the Board of General Appraisers no new evidence was introduced, the board having before it only the record and exhibits which the collector had had before him at the time of his action. The Board of General Appraisers, however, considered the case and sustained the protests of the importers and reversed the decision of the collector, the essence of their finding being stated in the following extract from the opinion by General Appraiser McClelland:

The cases are submitted for decision on the official samples. We are therefore without evidence as to what the embellishment shown on the gloves would be considered by those competent to express the opinion of the glove trade, but we are inclined to think, in view of past experiences, that any uniformity of understanding between makers and dealers in gloves as to the meaning of the tariff phrase "stitched or embroidered with more than three single strands or cords" is absolutely hopeless. There has also been apparent conflict in the decisions of the board and the decisions of the courts as to what constitutes stitching or embroidering with more than three single strands or cords, and manifestly this condition has resulted from the fact that the language quoted from paragraph 445 is not a trade phrase, or one that has any common understanding among glove men.

We are inclined to think, in view of the ruling of the court in United States v. Trefousse and United States v. Passavant (154 Fed. Rep., 1005; T. D. 28000) and United States v. La Fetra (172 Fed. Rep., 297; T. D. 29810), that the gloves in question should not have been assessed under paragraph 445, and therefore we sustain the protests and reverse the decisions of the collector accordingly.

The Government now prosecutes this appeal, contending that the decision of the board was erroneous for the reason that, having no additional evidence before it tending to overcome the action of the collector, the board was without authority to make findings and conclusions reversing those made by that official.

Reduced to closer application, the position of the learned counsel for the Government is: That this is a case where the facts upon which the appraiser and collector have acted are special in their character, not facts within common knowledge; that the findings of the collector are presumed to be correct, and that inasmuch as no additional evidence was introduced by the importers at the time of the submission

of the record before the Board of General Appraisers, it follows that the board could not apply its own observations or knowledge or opinions to the record and exhibits, but as a matter of law was so bound by the strength of the presumption in favor of the action of the collector that it could do nothing but affirm his classification and assessment.

We will gain light upon the merits of these contentions by examining into the powers conferred upon the Board of General Appraisers. Proceeding upon the recognized rule that, in the first place, the collector, aided by such administrative officers as the law provides he may call upon, is the officer to decide what rate and amount of duties are chargeable upon merchandise imported, Congress, in its wish to safeguard the rights of the importer, created the Board of General Appraisers as an appellate body with authority to review a case which had been acted upon by the collector. · Power to examine into and decide the case upon the objections duly made by an aggrieved importer and " the invoice and all the papers and exhibits connected therewith" is the grant of jurisdictional authority to the board. The statute makes the method of appeal perfectly simple and direct. Transmission of the invoice papers and exhibits must be made by the collector to the reviewing body—the Board of General Appraisers. The board then examines and decides upon "the case" thus submitted, and its decision becomes final, subject to the right of appeal to the Court of Customs Appeals. Now, under this easy method, whereby the importer may seek a remedy against error on the part of the collector of customs, neither reason nor case prescribes that the Board of General Appraisers can effectively exercise its reviewing power only where the appellant introduces additional evidence to support his objections to the assessment made by the collector.

The general principles which underlie the whole law of appeals are counter to such a doctrine, in that the exercise of appellate jurisdiction depends upon no condition precedent whereby new evidence is heard before submission of the cause. An appellate tribunal to which a party who feels aggrieved may lawfully go says whether, upon the facts and the law as found and stated by the inferior court or deciding body or person, justice has been done. It is sometimes found that the reviewing tribunal has been clothed with authority to hear further evidence, by way of supplementing that in the record, and we do not mean to express doubt of the power of the Board of General Appraisers to hear expert witnesses in aid of the meaning of commercial terms, as used in tariff law, or in explanation of any matter of which judicial notice may not be had. Krusi *v.* United States, *supra*, p. 168 (T. D. 31213). But we are not concerned with that aspect of the law of appeals as applicable to the Board of General Appraisers, because, as we shall see, it is not directly relevant to the question under con-

sideration. At this moment it is enough to say that the right of appeal from a decision by a collector which is given to an importer carries with it the assurance that it will secure to him the judgment of the Board of General Appraisers upon the record transmitted. Such judgment, while subject always to such rules of law as may be pertinent to the general exercise of any appellate jurisdiction, must, nevertheless, be an independent one based upon the record as presented and not one ordered because of a refusal to consider the evidence. Any other construction of the statute which would circumscribe and curtail the scope of the power of the board by limiting its right of revision to cases where there is new evidence introduced would in effect nullify the essential advantage of the right of appeal itself.

So it is our opinion that if the record of the case contains competent evidence which was before the collector, it matters not whether such evidence was in the form of oral statement or tangible physical object called an exhibit, the duty of the appellate body is to consider such evidence and to apply the law to it. The board may deem the evidence insufficient to justify reversal or modification of the findings made the basis for appeal, and it may sustain or reverse or modify the decision arrived at by the collector; but consideration of the evidence must be had, independent judgment upon it must be exercised, and independent decision with relation to it must be given.

Thus we are led to observe that decision of a case submitted to the Board of General Appraisers means much more than inquiry into the record merely to ascertain whether the collector acted upon evidence of one or another character, to the end that if it should be found that the decision appealed from was upon inspection of an article of merchandise not of the most ordinary nature, at once there arises lack of power to make an independent decision; hence *pro forma* affirmance must follow. Reasoning along this line of thought would compel the view that the board must exclude all detailed evidentiary demonstration that is furnished by the very subject of the controversy between the Government and the importer. As well might there be excluded from the consideration of an appellate court the device patently simple, yet involved in a patent infringement suit, and to which the judge of the trial court had applied the indisputable axiomatic laws of mechanics as a predicate for his conclusions. A practice of this kind would mean the establishment of rules of evidence by which visual inspection of an article offered would be of no weight unless accompanied by oral expert explanation.

Keeping these general expressions in mind, we return to the particular importation, consisting of gloves, samples of which were before the collector when he made the assessment of duty. We accept it as correct that when the board took up the case the presumption

was that the collector had done his duty properly and that this presumption operated in favor of his assessment by attending the case when it was considered by the Board of General Appraisers. But, like presumptions which commonly attend judgments of *nisi prius* courts, it was subject to rebuttal by one properly exercising the right of appeal, provided he could successfully sustain the burden of showing that the finding made was erroneous.

In this respect the attitude of the protestant in a customs matter becomes very similar to that of an appellant in a court of law who seeks a reversal upon the ground that the judgment of the lower court is contrary to the evidence. To recover he must affirmatively satisfy the reviewing judges that the weight of the evidence is against the view of the lower court; but if he succeeds in doing so he must prevail. Whatsoever the samples of the gloves were, howsoever they had been stitched or embroidered, whether there were or were not three single strands or cords of stitching or embroidery, were facts fairly ascertainable by personal inspection, aided by application of definitions of what constitutes cords, strands, and rows of embroidery. It can not be well disputed that the collector was justified in making the classification upon the sample and the advice of the local appraiser. And upon the record which went before the Board of General Appraisers, the case was not one involving trade phrases or facts only to be known after technical explanation of the exhibits in evidence.

While doubtless the decision of any question affecting construction of a manufactured article is often made simple after hearing some explanation of the process and methods of manufacture from those whose experience and special knowledge enable them readily to make those matters clear, yet innumerable instances arise where the deciding power can and must apply a knowledge which is perhaps somewhat out of that invoked in the daily affairs of men, yet is well within the purview of that common knowledge which judicial authority may rely on for the determination of questions presented for decision. This is such an instance. Inspection showed whether there were cords and embroidery, the samples furnishing evidence sufficient, in the opinion of the board, to overcome the presumption in favor of the collector's decision.

The sample is also before us. We find ourselves unable to say that the board erred in holding that the ornamentations upon the gloves are not strands as synonymous with rows of embroidery. United States *v.* La Fetra (172 Fed. Rep., 297); United States *v.* Passavant (154 Fed. Rep., 1005). The merits of this phase of the litigation, however, need not be dwelt upon, inasmuch as the counsel for the Government has submitted the case, insisting not that the actual facts call for maintenance of the collector's action, but that whatever the action of the collector

was this court must sustain it for lack of power in the Board of General Appraisers and in this court to reverse it. Having shown, however, that this latter position is untenable, and that there was evidence before the board sufficient to warrant a reversal, it follows that the decision of the Board of General Appraisers was right, and must be *affirmed.*

MONTGOMERY, Presiding Judge, and SMITH, BARBER, and DE VRIES, Judges, concur.