DOAP LEUN HONG Co. *v.* UNITED STATES (No. 3449)[1]

---

[1] T. D. 45481.

314

United States Court of Customs and Patent Appeals, January 25, 1932

Lawrence & Baldwin (*Martin T. Baldwin* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 11, 1931, by Mr. Folks; submitted on brief by appellants]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

Appellants, in 1927 and 1928, imported certain merchandise at the port of San Francisco which was classified and assessed for duty by the collector under paragraph 34 of the Tariff Act of 1922 as drugs advanced in value at ten per centum ad valorem.

Appellants protested, claiming the same to be properly dutiable as crude drugs under paragraph 1567, or, in the alternative, as crude vegetable substances under paragraph 1622 of said act.

Upon the trial the lower court overruled the protests and entered judgment accordingly. From such judgment this appeal is taken.

The competing paragraphs are as follows:

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for, but which are advanced in value or condition by

shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided,* That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

PAR. 1567. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

PAR. 1622. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

The classification of the collector that the involved merchandise is a drug advanced is presumptively correct. In order for the collector to make the classification which he did make in this case it was necessary for him to find, first, that the merchandise here involved was a drug and, second, that it was advanced, bringing the drug within the provisions of paragraph 34.

In the case of *United States* v. *Schering et al.,* 123 Fed. 65, the court said:

Where the classification of merchandise depends upon the existence of specified descriptive characteristics, it is to be presumed in favor of a correct classification that those characteristics were found by the officers of customs.  *  *  *

The foregoing was quoted with approval by this court in the case of *Pantasote Co.* v. *United States,* 1 Ct. Cust. Appls. 47, T. D. 31008.

Upon the trial below appellants did not in any way attempt to challenge the finding of the collector that the merchandise in issue was a drug, but sought only to establish that it was crude and not advanced. We think appellants had a right to accept the finding of the collector that the merchandise in issue was a drug, and it was unnecessary for them to prove that fact in support of their claim for classification under paragraph 1567. Therefore, if there were no other evidence in the case, and appellants established that the merchandise in issue was crude and not advanced, their protest should have been sustained.

The Government, however, had the right to establish upon the trial, if it could, the real character of the merchandise in issue, and was not foreclosed from doing so by the classification made by the collector. The Government here claims that the merchandise in question is not a drug, but that it is a food, and in support of such

contention relies upon a certain bulletin of the United States Department of Agriculture, offered in evidence upon the trial by the Government and received over the objection of appellants. The admission of this bulletin in evidence is assigned as error by appellants.

This bulletin appears to have been issued by the Office of Experiment Stations of the United States Department of Agriculture, and is entitled—

A Description of Some Chinese Vegetable Food Materials and Their Nutritive and Economic Value, by Walter C. Blasdale, instructor in chemistry, University of California.

The letter of transmittal by the director of the Office of Experiment Stations is as follows:

WASHINGTON, D. C., *July 15, 1899.*

SIR: I have the honor to transmit herewith a report by Walter C. Blasdale, instructor in chemistry at the University of California, describing some Chinese vegetable food materials and their nutritive and economic value.

These foods are used to a considerable extent by the Chinese population in San Francisco and other cities in the United States, and most, if not all, of them are staple articles of diet in China and the Orient. It seems probable that some of the vegetables may become generally and favorably known in the United States.

Very little information has been hitherto available concerning many of these materials, and it is believed the report is a useful contribution to the knowledge of the food of mankind.

The report is respectfully submitted, with the recommendation that it be published as Bulletin No. 68 of this office.

Respectfully,

A. C. TRUE, *Director.*

Hon. JAMES WILSON,
    *Secretary of Agriculture.*

Upon the trial, appellants' witness was asked upon cross-examination if he could identify certain Chinese characters found in said bulletin. He replied that he could and, upon their being shown to him, stated that said characters described in Chinese the plant from which the merchandise here in issue is derived and gave a pronunciation of such characters, which is represented in English in the record by the words "Cheu shat," which, we assume, is the name given to such merchandise by Chinese.

The Government makes some contention that the witness further identified the said merchandise by giving its scientific name as *euryale ferox,* but it is clear to us that his testimony should not be so construed. The testimony that the Government relies upon to support this contention is as follows:

Q. Do you know the technical name of the plant from which Exhibit 2 comes?—A. No.

Q. Would you know the Chinese character representing the name of that plant?—A. I don't know.

Q. I am asking if you would recognize the Chinese characters showing the name of that plant if you saw it?—A. Yes, sir; I can.

Q. Can you identify it?—A. Yes, sir.

Q. Is that the name of it?—A. Yes, sir.

Judge CLINE. What does "that" mean? Put on the record that counsel for the defendant shows a picture to the witness and calls his attention to a certain thing.

By Mr. CANTY:

Q. Is what you just identified as the Chinese name of the plant, the name as follows: *Euryale ferox?*—A. Yes, sir.

Q. What is that name? A. Cheu shat.

It is clear to us from the foregoing testimony that the witness did not intend to testify as to the scientific name of the merchandise here in issue. He had before stated that he did not know it and, when he was asked to give the name of the merchandise, he answered that it was "cheu shat." In his previous testimony he had stated that the name of the seed, the kernel of which is the merchandise in issue, is "siu sut." If the witness had identified the merchandise in issue as having the scientific name of *euryale ferox*, then we might resort to dictionaries and scientific works to aid us in arriving at the meaning of such scientific name. However, the Government contends that the bulletin in question is admissible for the purpose of proving that merchandise known as "cheu shat" is known by the scientific name of *euryale ferox*, because the author so states.

Inasmuch as we have found that the witness did not identify the merchandise as *euryale ferox*, the question arises as to whether we may accept the statement of the author of the bulletin that the scientific name of the plant designated by the witness as "cheu shat" is *euryale ferox*.

It does not appear that the author of this bulletin is an officer of, or employed by, the Government, and we think that the letter of transmittal, heretofore quoted, affirmatively shows that it was not issued as a statement of facts by officials of the Government but only purports to give the opinions and conclusions of the author of the bulletin. For this reason, we think that the bulletin has no greater evidentiary value, with respect to the facts stated therein, than if it had been privately published by the author. We do not think it would be contended that, if this bulletin had been privately published, it would have been admissible in evidence for the purpose of establishing a fact requiring proof. "Cheu shat" or "siu sut" being the English representations of the Chinese pronunciation of Chinese characters, we do not think that we can take judicial notice of their meaning, and, in order to establish that the merchandise here in issue comes from a plant which was scientifically known as *euryale ferox*, it was necessary to prove it as any other fact. The mere statement in the bulletin that the scientific name of the plant known as "cheu shat" is *euryale ferox* is not proof of the fact. We may

observe that we do not find the term "cheu shat" or "siu sut," or any similar words, in any dictionary or scientific publication or reference. If we could take judicial notice of the meaning of said words "cheu shat" or "siu sut," then the statement in said bulletin that the scientific name of the said words represented by the Chinese characters in the bulletin might be considered by the court, but only as an aid to the understanding of the court of the meaning of such words, and not as direct proof that their scientific name is *euryale ferox. United States* v. *Felsenthal & Co.*, 16 Ct. Cust. Appls. 15, T. D. 42713.

Inasmuch as we can not take judicial notice of the meaning of said words, it seems to us that the statement of the author of the bulletin that the scientific name of the plant described by the witness as "cheu shat" is *euryale ferox* should be regarded as pure hearsay, and for that reason is inadmissible as evidence to establish such claimed fact.

In the case of *United States* v. *G. Hempstead & Son*, 153 Fed. 483, it was held in a protest case that an official report by a Government chemist, which was made at the request of the Board of General Appraisers and related to merchandise involved in a case pending before the board, was incompetent because *ex parte*, not under oath, and not subject to cross-examination.

To the same effect is the case of *Missouri, K. & T. Ry. Co.* v. *Dale Bros. Land & Cattle Co.*, 179 S. W. 935, involving the question of the admissibility of a bulletin of the United States Department of Agriculture.

We can find no statutory law giving any evidentiary value, in protest cases, to statements of fact of which the court can not take judicial notice in a publication of this character, that is, statements made by a private citizen on his own initiative and not at the instance of the Government, and we know of no rule of evidence that permits their introduction for such purpose.

We are constrained to hold that there is no evidence that the scientific name of the plant from which the merchandise in issue comes is *euryale ferox*, and it is therefore immaterial as to what the meaning of that scientific term may be, or what the bulletin states the uses of *euryale ferox* are, assuming that the bulletin is competent evidence on this point.

The Government further contends that the special report of the appraiser to the collector, having been made within the time within which the collector was authorized to reliquidate the entry, rebuts the presumption of correctness of the collector's classification. The material portion of said special report reads as follows:

* * * Shiu sut (Inv. #11944, Cs. #31–6) is a nut resembling a lotus nut but smaller in size and is used by the Chinese in making or flavoring soup. In its imported condition it is split and was returned for duty as "prepared vegetable"

at 35 per centum under paragraph 773, following the decision of the department in T. D. 36171. In T. D. 43384 the Customs Court, upon a newly tried case, held sue sitt (shiu sut) to be dutiable as a drug advanced at 10 per centum ad valorem under paragraph 34. No sample submitted.

We do not think that this report of the appraiser can be resorted to for the purpose of impeaching the classification made by the collector, even if it could be so construed.

Apparently, the appraiser was of the personal opinion that the merchandise was a food, but he called the attention of the collector to the fact that the United States Customs Court had rendered a decision that like merchandise should be held to be a drug advanced. Upon inspection of the invoices, we find that the appraiser's notations with respect to this merchandise are, in red ink, "Prep. Vegt." These words are stricken out, there being a red line drawn through them, and over the same, also in red ink, is found the following: "Drug Adv." It is apparent, therefore, that the original description of the merchandise furnished to the collector by the appraiser, and upon which the collector liquidated the entries, was that the merchandise consisted of drugs advanced, and we do not think that the special report, upon which the Government relies, indicates that the appraiser had come to a different conclusion with respect to the proper description of the merchandise *for duty purposes*. The effect of his report is that, similar merchandise having been judicially determined to be a drug, the merchandise in issue is likewise a drug.

However, assuming that there were conflict between said special report of the appraiser and the collector's classification, which we hold there is not, it would seem, under the decision of this court in the case of *United States* v. *Gandolfi*, 12 Ct. Cust. Appls. 455, T. D. 40615, that the collector had the right to reject a description of the merchandise furnished him by the appraiser, and that, in such case, the report so furnished could not be considered as presumably correct.

We hold, therefore, that there is no competent evidence in the record overcoming the presumption of correctness of the fact found by the collector, that the merchandise was a drug, and the only question in issue, as appears from the record, is whether said drug is advanced or crude.

A sample of the merchandise was introduced in evidence as Exhibit 2 and is before this court. It appears from the testimony that the merchandise in issue consists of split and broken kernels of seed from a plant belonging to the water-lily family; that the seeds, while green, are cracked by a bamboo mill for the purpose of extracting the kernels from the hulls; that in such process the kernels are incidentally split or broken, and that there is no purpose, in the operation, of either splitting or breaking them, nor is there any advantage in their use in their being so split or broken.

Clearly, the shell is no part of the drug. It is evident that the only purpose of the cracking process is to get the drug by itself. It has been uniformly held that such a process does not advance an article from its crude state. *United States* v. *Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T. D. 32245. We do not deem it necessary to discuss further the question of whether merchandise, which has undergone such a process as the testimony in this case reveals, is advanced, for this precise question was decided in the negative by this court in the case of *Tong & Co.* v. *United States*, 15 Ct. Cust. Appls. 153, T. D. 42218, wherein it was held that a certain Chinese drug, known as *mok kar*, should be classified as a crude drug, it being shown that nothing had been done to it except splitting and drying.

We find, therefore, that the evidence in the case overcomes the presumption of correctness of the collector's classification that the merchandise in issue is a drug *advanced*, and establishes that it is, in fact, crude, and is free under said paragraph 1567, as claimed by appellants.

The court, below, in its opinion, undertook to take judicial notice of an assumed lack of credibility of a certain class of witnesses, which was clearly erroneous, but, in view of the conclusion we have reached, it is unnecessary to discuss it.

For the reasons stated, the judgment of the United States Customs Court is *reversed*, and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.

### CONCURRING OPINION

GRAHAM, Presiding Judge, specially concurring: I can not concur in the majority opinion filed in this case, although I agree with the conclusion that the protest should have been sustained. The imported goods were, upon this record, crude drugs, and should have been free of duty as such under paragraph 1567 of the Tariff Act of 1922.

The goods were drugs, in my judgment, on the weight of the evidence in the case, added to the presumption which arose from the collector's classification. The witness Haw Yan, the only one called in the case, showed considerable information about the subject matter and testified unequivocally that the goods were drugs and were used as such. No reason occurs to my mind why his testimony is not worthy of credit. I am not ready to approve the doctrine that his testimony should be rejected because of his race or business as seems to be intimated in the opinion of the court below.

To meet this the Government offered in evidence a bulletin issued under the authority of the Department of Agriculture of the United States. I think the majority opinion departs from the long-established rule of this court in holding the same to be inadmissible for

any purpose which it may serve. The law is well stated by *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288. I am of opinion that this court, or the court below, may at all times refer to such documents issued by any department of the Federal Government, and that they should go in evidence, when offered, to assist the court in the determination of matters before it. The majority opinion seems to indicate a contrary view, in which I do not concur.

However, even conceding the admissibility of this pamphlet, I do not believe this sufficient to overcome the weight of the evidence offered by the witness Yan. This being true, the goods should have been classified as drugs. That these drugs are crude can not be doubted under the authorities cited in the majority opinion.

Much of the confusion in the case might have been obviated if Government counsel, instead of offering in evidence a pamphlet which, at best, was secondary evidence, had called a scientific witness to elucidate the facts which the court below was called upon to decide. The case was heard in San Francisco and there must have been, within easy call by subpœna, many witnesses who could have fully informed the court as to the name, characteristics, and possible uses of the imported goods. Such a course of procedure would not only lead to a more just disposition of these matters but would assist the courts to a very material degree.

CONCURRING OPINION

Bland, Judge, specially concurring: I concur in the conclusion reached by the majority, but wish respectfully to dissent from certain language used which, when considered upon its plain meaning, or from the implications which it makes, brings about a result which, I think, is entirely contrary to settled law. I can concur in the result because, after a most careful examination of pertinent authorities, I doubt if it can be said that the particular seed involved has been sufficiently identified as *euryale ferox* to warrant the court taking judicial notice of the meaning of the term and the characteristics of the seed of the plant.

The witness, in attempting to identify the plant, pointed to two Chinese characters found at page 40 of the Department of Agriculture bulletin referred to. If he had identified this plant by its Chinese name, it would seem proper for this court to take judicial notice of the English meaning of Chinese names when found in Chinese-English dictionaries, as we would take judicial notice of a French or Italian name. The trial judge no doubt admitted the bulletin for the purpose of ascertaining the Latin or English name of the plant whose name had been given in Chinese and for the purpose of determining the definition and character of the plant whose English name had been so acquired.

In considering the question of the effect to be given dictionary definitions, articles by scientists on scientific subjects, reports, bulletins, and so forth, for the purpose of refreshing the court's memory in matters it may take judicial notice of, there is ofttimes confusion between the right to receive the same in evidence and the right of the court to consult them for the purpose of refreshing its memory on matters within the common knowledge. This question was gone into by this court in *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, 175, T. D. 37288. We there went thoroughly into the question of what the court may consult in aid of memory and quoted with approval from an opinion of Mr. Justice Gray in *Jones* v. *United States*, 137 U. S. 202, 216, in which it was said:

In the ascertainment of any facts of which they are bound to take judicial notice, as in the decision of matters of law which it is their office to know, the judges *may refresh their memory* and inform their conscience *from such sources as they deem most trustworthy.* (Gresley Eq. Ev., pt. 3, ch. 1; *Fremont* v. *United States*, 17 How. 542, 557; *Brown* v. *Piper*, 91 U. S. 37, 42; *State* v. *Wagner*, 61 Maine 178.) (Italics ours.)

While it was proper for the court in the case at bar, if the seed of the plant had been identified as the seed of *euryale ferox*, to have taken the citation of the Department of Agriculture bulletin and consulted it relative to the matters in controversy in this case, it would seem to be the better practice not to admit it as a matter of evidence. *The courts, however, have decided that it is not prejudicial error to receive evidence relating to a matter of which they may take judicial notice.* 4 C. J. 981, *Ham* v. *State*, 156 Ala. 645, 47 S. 126; *Whitney* v. *Jasper Land Co.*, 119 Ala. 497, 24 S. 259; *Wabash R. Co.* v. *Campbell*, 219 Ill. 312, 76 N. E. 346; *Chicago, etc., R. Co.* v. *Neff*, 25 Ind. A. 107, 56 N. E. 927; *Zarate* v. *Villareal* (Tex. Civ. App.), 155 S. W. 328.

The courts take judicial notice of the reports of the heads of the Federal executive departments. 23 C. J. 102. In *Tempel* v. *United States*, 248 U. S. 121, the Supreme Court of the United States, in considering the findings of fact of the lower court, said:

* * * The findings of fact made by the trial court (amplified by the reports of the Secretary of War, of which we take judicial notice) show that the Government claimed at the time of the alleged taking and now claims that it already possessed, when it made its excavation in 1909, the property right actually in question.

In customs jurisprudence, where we are called upon to determine what a thing is, which is often dependent on its use, such as drugs, medicinal preparations, foods, etc., the courts have a right to consult authoritative writings as an aid in such determination. They may do so when nothing but the record and the sample is before them and without any other evidence whatever. See *United States* v. *Davies, Turner & Co.*, 16 Ct. Cust. Appls. 50, T. D. 42719; *United States* v.

*Perkins*, 1 Ct. Cust. Appls. 323, T. D. 31430; *United States* v. *Arnold & Co.*, 4 Ct. Cust. Appls. 49, T. D. 33267.

Of course a court should not rely upon authorities that are unreliable or which do not carry with them a certain amount of obvious correctness. Their lack of convincing correctness goes to the weight to be given to the authority rather than to the question of whether its consideration by the courts is not warranted.

In *United States* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, 561, T. D. 43294 (a classification case), concerning the admissibility of certain statistical statements of the Department of Commerce, with reference to what certain fancy leathers were chiefly used for in the United States, this court said:

> Error is assigned in the refusal of the trial court to admit in evidence the certain certified statistical statements of the Department of Commerce, hereinbefore referred to. We have examined these records and can find no reversible error in their refusal. While they might have properly been received in evidence and given such consideration as they were entitled to, we can see little or no probative force in them. * * *

The Department of Agriculture bulletin at bar is issued from the office of an experiment station of such department. The Department of Agriculture, under its official seal, gave its approval of the contents of the bulletin by such issuance. It consists of a very exhaustive and able treatment of the subject of some Chinese vegetable food materials, by Walter C. Blasdale, instructor in chemistry, University of California. This authority appears to me to be a sufficiently reputable one to justify the lower court's consideration of it, if sufficient identifying facts had appeared in the record. It may not have been binding upon the court. The court could have regarded it as of insufficient weight for the determination of the issue, but the court certainly had the right to consult it and give it such weight as it deemed necessary.

In this particular case I have made considerable investigation in the Chinese and Japanese division of the Congressional Library of the matter involved in this controversy, and after doing so I am constrained to agree with that portion of the opinion of the majority which expresses the view that this record does not contain sufficient facts to warrant the conclusion that the seeds referred to by the witness as "cheu shat" in one instance and as "siu sut" in another are the exact seeds to which the bulletin refers by the two Chinese characters therein used.

I find in Giles' Chinese-English Dictionary, at page 179, character 1753 (which is a single character) somewhat resembling the first character used in the bulletin, which is defined as—

*A water plant (euryale ferox) allied to the water lily, having round spotted leaves and containing starch * * *. The meal of the seed is made into a coarse biscuit.* (Italics not quoted.)

and that the same character when associated with the last character used in the bulletin is defined as *the seed* of the above water plant. The last character here referred to in the above authority and in the bulletin means "fruit" or "seed."

Encyclopædic Terminology, by Wong Yun-Wu et al., at page 147, defines *euryale ferox* by the use of two characters, the last of which is identical with the last used in the bulletin at bar and the first of which is somewhat different. There the *euryale ferox*, whose popular Chinese name is "cock's head" on account of the shape of the plant, is said to have been cultivated throughout the ages in China and that its seed is used for food, and that the plant is also extensively cultivated in Japan.

In the Department of Agriculture bulletin at bar, the authority for the characters used and the statement that it is used as "a part of the complex dietary of the Asiatic races" is Bretschneider, Jour. China Branch Roy. Asiatic Soc. 25 (1890), page 218. This authority was examined, and the first character used in representing *euryale ferox* differs slightly from the first character in the bulletin. By consulting Chinese-English dictionaries it is found that the character used in the bulletin does not mean "water lily" but is a broad expression meaning a plant, gorse, hay, and so forth. Thus it will be seen that the particular characters identified by the witness as representing the seeds at bar do not in fact truly represent them and the identification of the English or Latin name of the plant from which the seed is derived is not sufficient to warrant this court saying that the particular seeds at bar are the seeds of the *euryale ferox*.

Now, if the Chinese-English dictionaries agreed that the particular characters identified by the witness and used by the bulletin meant *euryale ferox*, then I would have no difficulty in resorting to the numerous authorities in order to determine whether the plant was a drug or a food.

The definition of the word "drug" depends upon its use. *United States* v. *Maine Central Railroad Co.*, 7 Ct. Cust. Appls. 114, 117, T. D. 36427. In classification cases where the definition of a thing is by reference to its use, the written authorities have been so frequently accepted by the court in determining this question that citations are unnecessary.

I wish, furthermore, to call attention to the inaptness of the two cases cited in the majority opinion, to wit, *United States* v. *G. Hempstead & Son*, 153 Fed. 483, and *Missouri K. & T. Ry. Co.* v. *Dale Bros. Land & Cattle Co.*, 179 S. W. 935. These citations, together with the language used in connection therewith in the majority opinion, may prove quite misleading.

In the *Hempstead & Son* case, a chemist's report, no doubt prepared for the case, which had been considered by the Board of General Appraisers, was not regarded as competent proof by the circuit court. Of course, a chemist's report made for the purpose of the trial was not competent, but this is far from saying that a chemical authority may not be consulted for the purpose of determining the meaning of chemical terms or the components of chemical substances.

The Texas case is cited upon the proposition that a United States Department of Agriculture bulletin was held not to be admissible. In that case the bulletin was offered as evidence of a fact concerning how much cattle would lose in weight under certain conditions. The court rejected the bulletin because it did not appear that the cattle upon which the Agricultural Department had experimented were subjected to the same conditions as those involved in the Texas lawsuit. This is far from holding that an Agricultural Department bulletin may not be consulted by a judge for the purpose of refreshing his knowledge about things of which he can' take judicial notice.

In the opinion of the majority are found the following statements:

It does not appear that the author of this bulletin is an officer of, or employed by, the Government, and we think that the letter of transmittal, heretofore quoted, affirmatively shows that it was not issued as a statement of facts by officials of the Government but only purports to give the opinions and conclusions of the author of the bulletin. For this reason, we think that the bulletin has no greater evidentiary value, with respect to the facts stated therein, than if it had been privately published by the author.  *  *  *

\*        \*        \*        \*        \*        \*        \*

We can find no statutory law giving any evidentiary value, in protest cases, to statements of fact of which the court can not take judicial notice in a publication of this character, that is, statements made by a private citizen on his own initiative and not at the instance of the Government, and we know of no rule of evidence that permits their introduction for such purpose.

As I see it, these statements are either prompted by an erroneous view of the law or else they are inadvertences. At any rate they are quite misleading. In the first sentence attention is called to the fact that the author of the bulletin is not an officer of the Government. This would seem to imply that the court could not consult the bulletin because it was not a Government document, but might have done so if it had been a Government document. This is clearly erroneous in view of the decisions. Furthermore, it states that the document, if privately published, would not be admissible. It would seem to follow that the same contention extends to what may be considered by the court. The same argument would apply to the dictionary, or any recognized scientific authority by a single author.

The last quoted sentence states that there is no statutory law nor any rule of evidence which permits the introduction of a document like the bulletin at bar for the purpose of proving a fact of which the

court could not take judicial notice. The difficulty with this sentence is that it means nothing, in the case at bar, because the court *can* take judicial notice of matters which are covered by the bulletin, and the courts have often held that such matters may be considered by the court irrespective of whether they have been *introduced for such purpose* or not.

For the reasons aforesaid, I concur only in the result of the decision of the majority.