## MADDOCK *v.* MAGONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 244.· Argued February 1, 1894. — Decided March 12, 1894.

In construing a tariff act, when it is claimed that the commercial use of a word or phrase in it differs from the ordinary signification of such word or phrase, in order that the former prevail over the latter it must appear that the commercial designation is the result of established usage in commerce and trade, and that at the date of the passage of the act that usage was definite, uniform, and general, and not partial, local, or personal.

THIS was an action to recover duties paid under protest. The bill of exceptions, omitting formal parts, was as follows:

"The plaintiff imported in the year 1886 into the port of New York certain goods, consisting of mugs, plates, cups, and saucers, made of china, of small size, and claimed by him to be dutiable as toys. Duty was assessed by the defendant and paid by the plaintiff at the rate of ·sixty per cent. ad valorem

under protest as follows: "Against your decision and assessment of duties as made by you and the payment of more than 35% ad valorem on our importation below mentioned, consisting of certain china toys, claiming that under existing laws and particularly by Sch. "N," act March 3, 1883, as toys said goods are liable at no more than 35% ad valorem and not at 60% ad valorem, as charged by you.'

"Due appeal was made and suit was brought in due time.

"Plaintiff further introduced evidence tending to show that the articles in question were in fact toys, and in addition that they were known in trade and commerce in March, 1883, and prior thereto, as toys, and were bought and sold under the denomination of toy plates, toy teas, and toy cans.

"In behalf of the defendant evidence was introduced tending to show that these articles were not handled by toy houses, but that they were bought and sold under the name of A B C plates, A B C mugs, A B C cans, and the cups and saucers were known as Minton teas or after-dinner coffees, and were also used in restaurants to serve coffee in, and that they were used by children to eat and drink out of, and not merely for the purpose of amusement.

"The court, at the conclusion of the evidence, submitted the question to the jury as follows:

"'You are to answer the question by yes or no whether these goods are or are not toys. You have heard the evidence, and all that it is necessary for me to do in leaving the case in your hands is to give you the definition of the word "toy": "A toy is a plaything; a thing the main use or purpose of which is the amusement of children." Bearing that definition in mind and as instructed by the evidence, you will determine as to these articles whether they are or are not toys.'

"Thereupon counsel for plaintiff requested the court to charge that if these articles were known as toys in trade and commerce in March, 1883, and prior thereto, the plaintiff is entitled to recover; which request the court refused so to charge, and plaintiff's counsel duly excepted, and the exception was duly allowed."

The record states that "after hearing the evidence for the

respective parties and the argument of counsel, the jury say that they find the goods in suit are not toys, and, by direction of the court, that they find a verdict for the defendant." Judgment was thereupon entered on the verdict in favor of the defendant, with costs, and this writ of error taken out.

*Mr. Edwin B. Smith* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

Plaintiff contended that the articles in question should have been assessed under the clause in Schedule N, in the tariff act of March 3, 1883, c. 121, "dolls and toys, thirty-five per centum ad valorem;" but the collector assessed them under Schedule B of that act, imposing a duty on "china, porcelain, parian, and bisque; earthen, stone, and crockery ware, including plaques, ornaments, charms, vases, and statuettes, painted, printed, or gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem." 22 Stat. 488, 495, 512.

After giving the ordinary definition of the word "toy," the court left to the jury the question whether these goods were or were not toys. No exception was reserved to this part of the charge nor to the action of the court in that regard. The evidence on behalf of the plaintiff tended to show that the articles were in fact toys, and on behalf of the defendant that they were "used in restaurants to serve coffee in, and that they were used by children to eat and drink out of, and not merely for the purpose of amusement;" but the plaintiff, in addition to the contention that they were in fact toys, attempted to establish that such was their commercial designation. Accordingly he offered evidence tending to show that "they were known in trade and commerce in March, 1883, and prior thereto, as toys, and were bought and sold under the denomination of toy plates, toy teas, and toy cans;" while defendant's evidence tended to show "that these articles were not handled by toy houses, but that they were bought and sold under the name of A B C plates, A B C mugs, A B C

cans, and the cups and saucers were known as Minton teas or after-dinner coffees."

Plaintiff requested the court to charge "that if these articles were known as toys in trade and commerce in March, 1883, and prior thereto, the plaintiff is entitled to recover." The court refused so to charge and this refusal is the subject of the only exception in the record.

In *Cadwalader* v. *Zeh*, 151 U. S. 171, 176, it was said that "it has long been a settled rule of interpretation of the statutes imposing duties on imports, that if words used therein to designate particular kinds or classes of goods have a well-known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention ; and that it is only when no commercial meaning is called for or proved, that the common meaning of the words is to be adopted." But it is also true that, as observed by Mr. Chief Justice Waite in *Swan* v. *Arthur*, 103 U. S. 597, 598, " while tariff acts are generally to be construed according to the commercial understanding of the terms employed, language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown."

The inquiry was whether, in a commercial sense, the articles were so known, trafficked in, and used, under the denomination of toys, that Congress, in the use of the particular word, should be presumed to have had that designation in mind as covering such articles.

Necessarily the commercial designation is the result of established usage in commerce and trade, and such usage, to affect a general enactment, must be definite, uniform, and general, and not partial, local, or personal.

The sole instruction requested by plaintiff was that he was entitled to recover if these articles were known as toys in trade and commerce at the time of the passage of the act and prior thereto. The prevalence of the usage related to the date of the act, and although if a special meaning were attached to certain words in a prior tariff act, it would be pre-

sumed that Congress intended that they should have the same signification when used in a subsequent act in relation to the same subject-matter, *Reiche* v. *Smythe*, 13 Wall. 162, this presumption is not conclusive, and the instruction was not objectionable because not referring to the date of the first appearance of toys in tariff legislation.

But the difficulty is that if these articles were only so known in one trade or branch of trade or in one part of the country; partially and locally, and not uniformly and generally; the conclusion announced by the instruction would not follow. Recovery could not be had on a theory involving different rates of duty at different ports of entry, or distinct and differing designations.

Plaintiff did not attempt to prove that the articles were handled by toy houses, though evidence was adduced by him that they were known as toys and bought and sold as "toy plates, toy teas, and toy cans," but not by toy dealers according to defendant's evidence; and if it were admitted that their signification as toys was confined to a particular locality, or to a particular class, as, for instance, to those who imported them, (in which case there might be danger that the designation would vary with the rates,) and not to those who dealt in them, and that a different meaning obtained elsewhere or among the latter, then the usage relied on would fail to be made out.

The instruction, without qualification in the direction of the essential elements of such a usage, was altogether too broad, and plaintiff cannot complain of the refusal to give it in the terms in which it was requested.

The jury found a special verdict that the articles were not toys, and then, by direction of the court, found a general verdict for the defendant. To this no exception was taken, but plaintiff contends that the general verdict was based upon the special verdict, and so was given upon an immaterial issue, and that it was error, there being evidence to establish commercial usage, to direct the general verdict as the legal result of the special finding. This, however, does not appear, and as the judgment was the logical, legal conclusion from the

general verdict, and no exception to the direction was preserved, there is nothing open to our review on this branch of the case. *Judgment affirmed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of this case.