CARSON et al. v. NIXON, Collector of the Port and District of Chicago.

(Circuit Court of Appeals, Seventh Circuit. November 22, 1898.)

No. 516.

1. CUSTOMS DUTIES—CLASSIFICATION—CONSTRUCTION OF TERMS USED IN STATUTE.

In order to give a general term used in a tariff law a special or trade meaning, to include only a particular class of articles, it must be shown that prior to the passage of the law such term was, in commerce and trade at all ports and trade centers of the country, a well-known, uniform, and universally accepted designation of such particular class.[1]

2. SAME—EMBROIDERED HANDKERCHIEFS.

All embroidered handkerchiefs, whether they are hemstitched, imitation hemstitched, scalloped, initialed, plain, reverse, or otherwise, are dutiable as embroidered handkerchiefs, under paragraph 276 of the tariff act of 1894; the term "embroidered handkerchiefs," in that paragraph, being descriptive, and not a commercial or trade designation.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This is an appeal from a decree of the circuit court affirming the decision of the board of general appraisers as to the classification of certain imported merchandise.

N. W. Bliss, for appellants.

Oliver E. Pagin, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The question in this case is whether, under the tariff act of August 28, 1894, certain imported handkerchiefs, made of flax, cotton, or other vegetable fiber, which were invoiced as "hemstitched and embroidered," "imitation hemstitched and embroidered," "scalloped-edged and embroidered," or "initialed," were dutiable at 50 per cent. ad valorem, according to paragraph 276, as "embroidered handkerchiefs," or at 40 per cent. ad valorem, according to paragraph 258, as "handkerchiefs not specially provided for in this act." The court below affirmed the decision of the board of general appraisers, who held that the word "embroidered," as used in paragraph 276, was descriptive, and included all the articles named. The contention of the appellants is:

"That at and before the passage of the act of August 28, 1894, the term 'embroidered handkerchief' was a well-recognized commercial term, designating a class of handkerchiefs which did not include any of the other well-known classes of such goods, known by other and different commercial designations."

Whether this contention is right is a question of fact, the rule for determining which has been quite distinctly indicated by the supreme court in the recent case of Maddock v. Magone, 152 U. S. 368, 14 Sup. Ct. 588, in which the inquiry was whether, in a commercial sense,

[1] As to use of commercial and trade names in tariff laws, see note to Dennison Mfg. Co. v. U. S., 18 C. C. A. 545.

certain articles were to be regarded as toys. An instruction having been asked that the plaintiff was entitled to recover if the articles were known as "toys" in trade and commerce at the time of the passage of the act and prior thereto, the court, in its opinion (page 372, 152 U. S., and page 589, 14 Sup. Ct.), said:

"But the difficulty is that if these articles were only so known in one trade or branch of trade, or in one part of the country,—partially and locally, and not uniformly and generally,—the conclusion announced by the instruction would not follow. Recovery should not be had on a theory involving different rates of duty at different ports of entry, or distinct and differing designations. Plaintiff did not attempt to prove that the articles were handled by toy houses, though evidence was adduced by him that they were known as 'toys,' and bought and sold as 'toy plates,' 'toy teas,' and 'toy cans,' but not by toy dealers, according to defendant's evidence; and if it were admitted that their signification as toys was confined to a particular locality, or to a particular class, as, for instance, to those who imported them (in which case there might be danger that the designation would vary with the rates), and not to those who dealt in them, and that a different meaning obtained elsewhere, or among the latter, then the usage relied on would fail to be made out."

The testimony on which the chief reliance of the appellants is placed, it is to be observed, was given by witnesses examined at Chicago and New York only; and no one of them professed or was shown to have knowledge of a general custom, or undertook to say, either expressly or inferentially, that the term "embroidered handkerchief," prior to the passage of the act of 1894, was, in commerce and trade at all ports and trade centers of the country, a well-known, uniform, and universally accepted designation of a particular class of handkerchiefs, which did not include other classes enumerated above, all of which, it is conceded, were in fact embroidered. A number of witnesses testified substantially to the same effect. For example, Homer A. Squires, who for five years had been in charge of linens and handkerchiefs at the wholesale store of Marshall Field & Co., testified that an article shown was "simply an embroidered handkerchief," was so "known commercially, and that, desiring to obtain that kind of handkerchief from abroad," he would "order it as an embroidered handkerchief," and "would expect to get a handkerchief that was hemmed and embroidered"; but whether that was true of importers and dealers at Boston, Philadelphia, New Orleans, San Francisco, St. Louis, and other ports or places, he was not asked, and he did not profess to know or believe the general custom to be to use the designation for a particular class of handkerchiefs, which did not include other classes of embroidered handkerchiefs. On the contrary, when asked on cross-examination, "Is that the only kind of handkerchief known in trade and commerce as an 'embroidered handkerchief,'" he answered, "That is the only kind known in our house as 'embroidered handkerchief'; that is, the only kind of a handkerchief we would expect to get if we ordered embroidered handkerchiefs." The witness having also stated on cross-examination that there is "a general class" of goods known commercially as "embroidered handkerchiefs," and that handkerchiefs like the exhibits in question "belong to a subclass of the general class of embroidered handkerchiefs," the leading question was asked him:

"Mr. Squires, while you may call them, in keeping stock (all of them that are embroidered), 'embroidered handkerchiefs,' as a matter of fact, in trade or commerce, all importers and foreign exporters and manufacturers and merchants recognize those handkerchiefs as distinct classes of handkerchiefs, and know them commercially, distinguishing between embroidered, hemstitched and embroidered, and scalloped and embroidered, and initialed?"

To that the witness responded, "Yes, sir." Being asked whether, if a customer in this country should order an embroidered handkerchief, the natural inquiry would be, "Do you want a hemstitched and embroidered, or scalloped and embroidered," he answered:

"Well, that is a hard question to answer. We have thousands of customers, and we have to use our judgment as to the class of merchandise they carry. If we had a first-class customer, like Scuggs, Vandervoot & Barney, of St. Louis, if they should telegraph or write us for fifty dozen embroidered handkerchiefs, we would not send them. We would wire them, and ask them whether they wanted scalloped or hemstitched. But, if some little fellow from 'Podunk' would order, we would use our judgment in filling the order."

Reiterating finally the statement that there is a distinct class of handkerchiefs known in trade and commerce as "embroidered handkerchiefs," exclusive of the other classes, the witness said:

"Embroidered handkerchiefs is something that is limited in price. Certain cheap-priced goods you have got to have, and you can only have embroidered handkerchiefs at certain prices, and you could not get hemstitched and embroidered to sell at five cents. We call these cheap ones 'embroidered handkerchiefs' only."

Edwin T. Lloyd, buyer of handkerchiefs for the appellants, in the course of his testimony said that, if an order was sent abroad for an embroidered handkerchief, it would not, he thought, be at all reasonable to expect in return a hemstitched and embroidered, or scalloped and embroidered, handkerchief. On the contrary, the witness Peter B. Steele, of the firm of Dunham, Buckley & Co., New York, to the question, "If there are handkerchiefs invoiced as embroidered, are they hemmed or hemstitched?" answered:

"We never have embroidered handkerchiefs hemmed. They are either hemstitched or scalloped. We never have such a thing as a hemmed embroidered handkerchief."

The testimony of other New York witnesses, though not directed specifically to the point (doubtless because taken in another case, and stipulated into this), is inconsistent with the theory that there is a distinct class of handkerchiefs, known as "embroidered," which does not include the other classes in question. Though called to testify about the different classes and commercial designations of handkerchiefs and though they explain what is meant by "hemstitched," "hemstitched and embroidered," "scalloped," "embroidered and scalloped," "imitation hemstitched," "hemstitched and initialed," and all agree that a hemstitched and embroidered handkerchief is one which is both hemstitched and embroidered, and not one which is only embroidered, they do not say or intimate that there is a distinct and limited class, known as "embroidered handkerchiefs," which does not include other classes which are in fact embroidered. We agree with the general appraisers:

"It was manifestly the purpose of congress, in changing the provision for 'embroidered and hemstitched handkerchiefs' in paragraph 373, Act Oct. 1, 1890, to 'embroidered handkerchiefs,' in paragraph 276 of the new act, to include all embroidered handkerchiefs, whether they are hemstitched, imitation hemstitched, scalloped, plain, reverse, or otherwise. This is plain from the language of the provision itself, as well as from its association with or inclusion in the same paragraph and at the same rate with other articles composed of the same materials, embroidered by hand or machinery. There could be no good reason for imposing the higher rate on embroidered handkerchiefs with a plain hem, or not hemmed at all, while admitting embroidered handkerchiefs when hemstitched, imitation hemstitched, or scalloped, at the lower rate; and it cannot be assumed that congress would perpetrate an absurdity or work an incongruity. The term 'embroidered handkerchiefs' (paragraph 276) is descriptive, and not a commercial or trade designation. It is therefore immaterial whether the handkerchiefs in question are or are not known commercially as 'embroidered and hemstitched handkerchiefs,' or 'embroidered and scalloped handkerchiefs.'"

The decree below is affirmed.