UNITED STATES v. NORDLINGER.

(Circuit Court of Appeals, Second Circuit. February 25, 1903.)

No. 141.

1. CUSTOMS DUTIES—LEGHORN CITRON—FRUIT PRESERVED IN SUGAR.

Leghorn citron, preserved by being cut in halves, boiled and soaked in salt water, freshened, and then covered with syrup and boiled down, and fresh sugar placed thereon, and the process repeated until the peel is thoroughly impregnated with the sugar and cured, is taxable as "fruits preserved in sugar," under Tariff Act 1883, par. 302, 22 Stat. 504, and is not entitled to admission free under paragraph 704, 22 Stat. 519, as dried fruits not specifically enumerated.

2. SAME—WORDS AND PHRASES—TRADE MEANING—EVIDENCE.

Evidence as to the trade meaning of a term used in the tariff act is inadmissible unless such meaning differs from the ordinary dictionary meaning of the term, or its meaning in common speech.

3. SAME—CUSTOMS AND USAGES—EXISTENCE—CONFLICTING EVIDENCE.

Where, on an appeal from a classification of imported citron for duty, the importer claimed that the term "fruits preserved in sugar," as used in Tariff Act 1883, par. 302, 22 Stat. 504, was a trade term having a peculiar trade meaning as applied to preserved fruits, but the evidence as to such meaning, and whether it differed from the ordinary meaning of the term, was conflicting, it failed to show a general custom with regard to the use of such term, which would, therefore, be construed according to its ordinary meaning.

¶ 2. Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. U. S., 18 C. C. A. 545.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 115 Fed. 828.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York, reversing a decision of the board of general appraisers, which affirmed a decision of the collector of the port of New York as to the classification for customs duties of certain imported merchandise.

J. Frank Lloyd, for the United States.

Albert Comstock, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The merchandise involved is citron imported from the Mediterranean, and known specifically as "Leghorn citron," because Leghorn is the place of largest export. The importation was under the tariff act of 1883, 22 Stat. 488, and the relevant paragraphs read as follows:

"Par. 302. Comfits, sweetmeats, or fruits preserved in sugar, spirits, syrup, or molasses, not otherwise specified or provided for in this act, and jellies of all kinds, thirty-five per centum ad valorem."

"Free List: Par. 704. Fruits, green, ripe, or dried, not specially enumerated or provided for in this act."

The language of the free-list paragraph is most comprehensive. "Fruits" covers a large family, and the adjectives "green, ripe, or dried" indicate the three great groups into which that family may be divided. No one contends that the article in question is a comfit, a sweetmeat, or a jelly. If, therefore, we eliminate those specific articles, we may set down as a paraphrase of the two sections the following:

"All fruits shall be admitted free of duty, whether they be green, ripe, or dried; but if such fruits, whether green, ripe, or dried, be preserved in sugar, in spirits, in syrup, or in molasses, they shall pay a duty of thirty-five per centum ad valorem."

This is precisely what Congress has said, and there is nothing in the act to indicate that Congress intended anything different from what it did say. Two questions are presented: First, is this citron a fruit, green, ripe, or dried? and, second, is it preserved in sugar, in spirits, in syrup, or in molasses? When those questions are answered, its status for duty purposes should be determined.

Citron is the fruit of the citrus or citron tree. In its present condition no one contends that it is green or ripe, no one disputes that it is dried. It belongs, then, to the family of fruits, and falls within the great group of that family designated as "dried fruits." In common speech, and by the language of trade and commerce, as this record shows, it is a dried fruit. It has been put in its present condition by the following process: The fruit is cut in halves, and the pulp removed. The rind, which is much thicker than that of a lemon, is then placed in sea water, in casks; then put in water and boiled until it is soft and tender; then put into fresh-water tubs until the salt is drawn out; then put into what are known as "syruping tubs," and covered

with syrup, and, after it has stood a while in the syrup, that is drained off, and it is boiled down, and fresh sugar added, and it is put back over the fruit again, and this process is kept up until the citron or peel is thoroughly impregnated with the sugar and cured. Fruit thus treated has certainly been preserved in sugar (or in syrup), and would seem to come fairly within the exception. The importers, however, contend that, although in fact preserved in sugar, the language of trade and commerce requires that it shall be admitted free of duty, and a most voluminous record has been presented to enforce such contention. It is suggested that the phrase "fruits preserved in sugar," has such a meaning in trade that citron, although in fact within its terms, must be excluded from the provisions of paragraph 302.

Before examining the testimony, it should be noted that evidence merely tending to show that citron is known as a dried fruit in trade is not determinative of the case. Common knowledge would give it the same classification. There can be no doubt that it belongs to that group, the important question being whether it is also covered by the exception to that group which Congress created when it provided that all fruits when preserved in sugar should pay duty. The tariff act under construction was passed March 3, 1883. The testimony as to trade meanings, therefore, should be confined to a period anterior to that date. By so confining it, very much of the evidence must be rejected, notably the bulky package of newspaper market reports and price lists, practically all of which were published long subsequent to 1883. It should also be noted that it is not a name to which the importers seek to affix a special trade meaning, as was the case in Maddock v. Magone, 152 U. S. 371, 14 Sup. Ct. 588, 38 L. Ed. 482 (toys), Bogle v. Magone, 152 U. S. 627, 14 Sup. Ct. 718, 38 L. Ed. 574 (sauces), and American Net & Twine Co. v. Worthington, 141 U. S. 472, 12 Sup. Ct. 55, 35 L. Ed. 821 (gilling twine). It is a phrase which would seem to have been selected rather as descriptive of what Congress had in mind than as importing some special trade meaning. It is understood, of course, that a phrase has sometimes been held to have a peculiar meaning when used in a tariff act, because trade used that phrase, and used it with such peculiar meaning (Toplitz v. Hedden, 146 U. S. 257, 13 Sup. Ct. 70, 36 L. Ed. 961), but quite frequently the use of descriptive language is found to indicate an intention not to use words in any sense different from that which characterizes them in common speech. Maillard v. Lawrence, 16 How. 251, 14 L. Ed. 925; De Forest v. Lawrence, 13 How. 274, 14 L. Ed. 143; Seeberger v. Cahn, 137 U. S. 97, 11 Sup. Ct. 28, 34 L. Ed. 599; Barber v. Schell, 107 U. S. 617, 2 Sup. Ct. 301, 27 L. Ed. 490; Newman v. Arthur, 109 U. S. 132, 3 Sup. Ct. 88, 27 L. Ed. 883. Again it is essential to the admission of testimony as to trade meaning that such meaning should differ from the ordinary dictionary meaning, or that of common speech, otherwise such testimony is immaterial. Maddock v. Magone, 152 U. S. 368, 14 Sup. Ct. 588, 38 L. Ed. 482. Finally, to give to descriptive language some special trade meaning different from its ordinary meaning by proof of commercial usage, the evidence must show that such usage is "definite, uniform, and general, not partial, local, or personal." Id., 152 U. S. 368, 14 Sup. Ct. 588, 38

L. Ed. 482. See, also, Berbecker v. Robertson, 152 U. S. 376, 14 Sup. Ct. 590, 38 L. Ed. 484; Saltonstall v. Wiebusch, 156 U. S. 602, 15 Sup. Ct. 476, 39 L. Ed. 549; Sonn v. Magone, 139 U. S. 421, 16 Sup. Ct. 67, 40 L. Ed. 203; Patton v. U. S., 159 U. S. 506, 16 Sup. Ct. 89, 40 L. Ed. 233; Dennison Mfg. Co. v. U. S., 18 C. C. A. 543, 72 Fed. 259.

The fundamental question in the case is one of fact. Does the proof show that the phrase Congress has used to cut exceptions out of the three great groups of fruits is used in trade and commerce so uniformly with a peculiar meaning that it must be assumed that Congress used it with the same meaning, and thus made the descriptive words selected by it less comprehensive than they would be in ordinary use; for, even in tariff acts "language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown." Maddock v. Magone, supra. The burden of proof is upon the importers. How far is the evidence helpful to a conclusion that by the definite, uniform, and general understanding of the trade, which deals in such articles, the phrase "fruits preserved in sugar" has a meaning so restricted as not to include the dried fruit citron, although it is in fact preserved in sugar? Eighteen witnesses called by the importers (L. Nordlinger, B. Levy, Materne, Seggerman, Hirsh, E. J. Nordlinger, Auerbach, Mendelsohn, Landbrodie, Levis, Walsh, Stewart, Webber, Wilkins, Rosenfield, Young, Derrick, and White) and 14 witnesses called by the government (Levy, L. Nordlinger, Cavanna, MacCune, Colvin, Murtagh, Clark, Gelpi, Leslie, Bonney, Beebe, Hoffman, Steele, and Dudley) were either not asked to give the commercial meaning of the phrase "fruits preserved in sugar, spirits, syrups, or molasses," or else testified that they had never dealt in articles of that class, or only to a very limited extent, and therefore did not undertake to give a commercial meaning. Eleven witnesses called for the government (Madden, Githens, Jenkins, Oliver, Bigley, Lowry, Mackenzie, Pfister, Mackie, Gordon, and Des Bordes) testified that the phrase, "fruits preserved in sugar, spirits, syrup, or molasses," did not have a commercial signification different from its ordinary descriptive meaning. Of the other government witnesses La Manna says there was such a trade term known as "fruits preserved in sugar, syrup, spirits, or molasses," which would include French glacé fruits, and such other fruit crystallized or preserved in sugar, generally served upon the table and eaten as they were. Ericson says that the term "fruits preserved in sugar" would be too indefinite, would not be specific enough as to whether it was in syrup or crystallized, or glacé or candied; that the commercial term is "preserved fruits"; that there was a commercial phrase "fruits preserved in syrup," but not "fruits preserved in molasses." Henry says the phrase "fruits preserved," etc., was not known as a commercial phrase; that the term most ordinarily used was "preserves." Ballejo says that the trade term was "preserves," and so does Des Bordes. Baird says that a preserved fruit is a fruit put up in a sugar syrup and sold as a preserve. Aplin says that the phrase "fruits preserved," etc., did not have a commercial meaning different from its ordinary descriptive meaning,

and that "preserves" covers only fruits in more or less syrup, and in a moist condition. Of the importer's witnesses, Keller says that he had a commercial familiarity with the class of "comfits, sweetmeats, and fruits preserved," etc., and that under that head would come candies, glacé fruit, preserves in jars and syrups. Brady says that he dealt in the commercial class of "comfits, sweetmeats, and fruits preserved," etc., and that glacé fruits, Wisbaden fruits, and French preserves put up in sugar and brandy belonged to that class, which had the common characteristic of being fit to be eaten in the condition they were in. Lange, Goldmark, and Horner testified to the same effect. None of these witnesses were asked specifically if the phrase in the statute had a special trade meaning. That specific question, however, was put to the remaining witnesses called for the importer with this result: Gordon says that the phrases "fruits preserved in sugar," "in syrup," "in spirits," "in molasses" are "hardly commercial terms; only explanatory." Graham says that the phrase "fruits preserved," etc., is "merely descriptive." Ohrenstein says there are "no trade terms known as 'fruits preserved in sugar,'" etc. Weisel says the phrases "fruits preserved in sugar, in syrup, in spirits, in molasses," are none of them trade terms. Stetten says that he doesn't recollect "fruits preserved in syrup" or "fruits preserved in molasses" as trade terms. On the other hand, Blank says that "fruits preserved in syrup" is a trade term, but that "fruits preserved in sugar" and "fruits preserved in molasses" are not trade terms.

Upon this record we are unable to reach the conclusion that the phrase "fruits preserved in sugar" has such a definite, uniform, and general trade meaning that it will not operate to draw out of the third great group of fruits named in the free list, viz., "fruits dried," fruits which, although dried, are also in fact preserved in sugar.

The decision of the Circuit Court is reversed, and the decision of the board sustained.