(C. D. 1875)

NORMAN G. JENSEN, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 30, 1957)

*Wallace & Schwartz* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh* and *Mollie Strum*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The collector of customs classified the merchandise at bar as inedible animal oils, fats, or greases, and took duty under the provision therefor in paragraph 52 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, at 10 per centum ad valorem, plus an additional tax or duty at the rate of $2\frac{7}{10}$ cents per pound under the provision for such inedible oils, fats, or greases in section 2491 (a) of the Internal Revenue Code, as modified by the same proclamation.

The protest claim is that the merchandise is properly classifiable under the provision for "tallow, inedible" as contained in paragraph 701 of the tariff act, as modified, at ¼ cent per pound, and as contained in section 2491 (a), as modified, at 1½ cents per pound.

It must be assumed that, since Congress, in each of two instances in the tariff laws, provided for oils, fats, or greases on the one hand, and tallow on the other, the terms are mutually exclusive, i. e., that, for tariff purposes, at least, tallow is distinguished from oils, fats, or greases.

Plaintiff relies upon the common meaning of the term "tallow" as encompassing the merchandise at bar and cites the decision of this division of the court in the case of *H. A. Wood* v. *United States*, 32

Cust. Ct. 426, Abstract 57920, as establishing the common meaning of the term. In that case, under authority of *Swift & Co., a Corporation* v. *United States*, 27 C. C. P. A. (Customs) 181, C. A. D 83, and *Same* v. *Same*, 30 C. C. P. A. (Customs) 171, C. A. D. 230, this division held—

\* \* \* that the common meaning of the term "tallow" is of broad significance and includes both unrendered and rendered animal fat \* \* \*

and that such common meaning was not limited by the so-called "titer" of the product.

On this basis, the plaintiff in this case established by competent evidence that the merchandise at bar consists of rendered animal fat. In assuming the burden of going forward with the evidence, counsel for the defendant announced that its effort would be devoted to establishing, under the doctrine of commercial designation, that the merchandise at bar was excluded from the meaning of the tariff term "tallow."

The rule of commercial designation is based upon the settled law that tariff acts are written in the language of commerce, which is presumably that in common use. The latter presumption is, however, rebuttable, and, if rebutted, the commercial meaning of a tariff term, in the absence of manifest contrary legislative intent, will prevail. Such commercial meaning must be shown to be uniform, definite, and general, and not local, partial, or personal, and to be the meaning the term bore at the time of the passage of the tariff act involved. *Maddock* v. *Magone*, 152 U. S. 368.

In pursuing its effort, counsel for the defendant sought to show that at, prior, and since the passage of the Tariff Act of 1930 and the Internal Revenue Code provision involved the commercial meaning of the term "tallow" was different from its common meaning, indicated above, in that, in its application to rendered animal fats, it was limited to such fats having a titer test of 40° centigrade or more, and that such meaning was uniform, definite, and general in the trade and commerce of the United States dealing in such products.

The evidence offered was the oral testimony of five witnesses who were or had been, prior to, at and since the passage of the Tariff Act of 1930 and the Internal Revenue Code provision involved engaged in the production or purchase and sale of tallow from rendered animal fats. Each of these witnesses testified that at all times in their experience in the trade and commerce of the United States dealing in rendered animal fats the term "tallow" was limited to such rendered fats having a titer test of 40° centigrade or more.

The testimony of the witnesses was shown to have been trade-wide, to be national in scope, and to the effect that the titer test requirement was invariable. None of the evidence was contradicted or re-

butted, and plaintiff's attack on the same is concerned with the fact that the term "tallow," according to the evidence, may be commonly and commercially applied also to unrendered fats, in which case no titer requirement applies.

The merchandise here involved, however, consists of rendered animal fats, and, as to such fats, the record is clear that commercially tallow is distinguished from oils, other fats, and greases by a requirement of a titer test of 40° centigrade or more. As a necessary part of its *prima facie* case, defendant established that the titer of the involved merchandise was less than 40° centigrade.

On the record made, we hold that the defendant has established, *prima facie*, all of those facts necessary, under the doctrine of commercial designation, to a determination that the commercial meaning of the tariff term "tallow," as applied to rendered animal fats, differs from its common meaning in that, under such commercial meaning, "tallow" is limited to such fats having a titer test of 40° centigrade or more.

Inasmuch as, under such circumstances, the commercial meaning of the term "tallow," as applied to rendered animal fats, must prevail and inasmuch as the merchandise at bar fails to come within that meaning, the protest claims must be overruled.

Judgment will issue accordingly