## ROHM AND HAAS COMPANY, Plaintiff,

v.

### The UNITED STATES, Defendant,

### Almac Plastics, Inc., Party-in-Interest.

### Court No. 80–9–01342.

United States Court of International Trade.

May 12, 1983.

Baker & McKenzie, Washington, D.C. (William D. Outman, II, Washington, D.C., at trial and on brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Madeline B. Kuflik, New York City, at trial and on brief), for defendant.

Almac Plastics, Inc. by Jerome Goldner, pro se.

LANDIS, Judge:

Plaintiff commences this action as an American manufacturer pursuant to 19

U.S.C. § 1516. The subject imported merchandise, sheets of acrylic resin (imported under the trademark "Plexiglas") was entered at the port of New York in May, 1980, by Almac Plastics, Inc., the party-in-interest to this lawsuit.

The imported merchandise was classified pursuant to TSUS item A771.41 as flexible plastic sheets and was granted duty free entry under the Generalized System of Preferences as products from Taiwan. Plaintiff claims that the imported merchandise is properly classifiable as "other sheets of acrylic resin" pursuant to TSUS item 771.45, at a duty rate of $.085 per pound.

The relevant statutes are as follows:

Tariff Schedules of the United States

Schedule 7.–Specified Products; Part 12.– Rubber and Plastics Products, Subpart B.– Rubber and Plastics Waste and Scrap; Rubber and Plastics Film, Strips, Plates, Slabs, Blocks, Filaments, Rods, Tubing and other Profile Shapes.

Films, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics.

Not of cellulosic plastics materials:

Film, strip, and sheets, all the foregoing which are flexible:

Other:

| Item A771.41. | Of materials other than polyester, polyvinyl chloride, polyethylene, or polypropylene, over 0.006 inch in thickness, not in rolls [2] | 6% ad val. |
|---|---|---|
| | x | |
| | x | |
| | x | |
| | Other | |
| Item A771.45 | Of acrylic resin | 8.5% per lb. |

During the course of the trial, plaintiff called five witnesses and defendant called one witness. Additionally, the court granted a representative and officer of Almac Plastics, Inc. the opportunity to participate at the trial.[1] The court received and entered fifteen (15) exhibits submitted by plaintiff and one (1) joint exhibit submitted pursuant to agreement of the litigants.

Plaintiff filed a trial brief and defendant filed a responsive trial brief. Plaintiff, although entitled, did not file a reply brief to defendant's responsive brief.

Plaintiff's initial witness, Walter G. Lee, was at the time of trial and importation of the merchandise in issue, Product Manager for Sheet Products for plaintiff Rohm & Haas Company (RHC). His unrefuted testimony indicates that he has been employed by plaintiff for over thirty (30) years and that plaintiff (RHC) is the premier United States sales company in the acrylic sheet industry. Identifying Exhibit 11 (a price list for manufacturing and sales by RHC, effective August 3, 1981), Mr. Lee stated that RHC has never marketed acrylic sheet in any size, thickness or dimension listed in Exhibit 11 as flexible plastic sheet. (R. 30–31)

Further testimony by Mr. Lee indicates that plaintiff's Exhibit I is comparable to the imported merchandise at issue, and, that plaintiff has never marketed such acrylic sheets as "flexible plastic sheets", but has marketed the product in issue as "a rigid plastic sheet" (R. 29–30). Mr. Lee testified that acrylic sheet is a transparent, rigid material with a high resistance to breakage and weather and can be substituted for glass in replacement window glazing. Mr. Lee also testified that since 1963 he has never encountered an acrylic sheet that has been sold or offered for sale in the United States as "flexible plastic sheets".

Mr. Lee also stated that the "Plexiglas" material in issue is shipped pursuant to documents referring to it as a rigid material in order to comply with pertinent Interstate Commerce Commission regulations. The witness offered no testimony as to a standard industry or commercial meaning of the term "flexible".

Plaintiff's subsequent witness was Mr. Frank W. Reinhart. This witness testified that he is currently a consultant in plastics

1. Mr. Jerome J. Goldner, Vice-President of Almac Plastics, Inc., the party-in-interest, entered a formal appearance after being fully advised of his legal rights to counsel by the court. Mr.

Goldner acknowledged his awareness of the trial and did not request assistance of legal counsel (R. 108–109).

and that he had previously been employed for twenty five (25) years by the National Bureau of Standards (NBS). Mr. Reinhart possessed excellent qualifications indicating a life-long career devoted to researching and evaluating plastic materials. The record indicates that Mr. Reinhart has been a member of the American Society of Testing Materials (ASTM) since 1945 and has received an honorary membership in ASTM, the highest bestowal award granted by that organization.

Mr. Reinhart was, at ASTM, chairman of a group developing definitions of terms for standards applicable to the plastics industry. He specifically stated that this group had difficulty developing a definition for the term "flexible", although the group perceived no problem defining terms such as "rigid", "semirigid" and "non-rigid". *The testimony definitively shows that members of Mr. Reinhart's committee continuously employed the term flexible during the discussion period but, that the committee could not agree upon a specific definition of the term "flexible" and thus, the committee never ratified a definition of the term "flexible".*

The record further indicates that in his attempt to develop a definition for "flexible" he examined every dictionary definition of "flexible" available, but found none of such terms examined satisfactory because the term had a trifold meaning in the plastics industry. Generally, he stated, that flexibility refers to three parameters: modulus of elasticity, dimension (emphasis on thickness), and intended use (R. 57–58). In general, this witness' opinion was of the fact that a plastic sheet with a modulus of elasticity of 100,000 psi and above is considered a rigid plastic sheet.

Mr. Reinhart identified Plaintiff's Exhibit 1 as "rigid sheet and stated that he did not consider it "flexible" because its modulus of elasticity was too high. He also testified that a good test of "flexibility" is to fold a plastic sheet back on itself and crease it and, if it breaks, it is not "flexible".

Mr. Reinhart next identified Plaintiff's Exhibit 2 as a corrugated rigid building panel, similar according to the witness, with the subject merchandise in *Sekisui Products, Inc. v. United States,* 63 Cust.Ct. 123, C.D. 3885 (1969). He testified that this panel is not "flexible". Generally, the witness testified that if a plastic breaks, cracks or crazes when folded he does not consider it to be "flexible". Mr. Reinhart stated that he had read the entire transcript of the *Sekisui* case, *supra,* and that he disagrees with *Sekisui* witnesses' that the meaning of the term "flexible" is synonymous with the common dictionary definition thereof.

As specific examples of "flexible" plastic sheet the witness identified plastics used in shower curtains, shoe uppers, furniture and imitation patent leather. Mr. Reinhart identified Plaintiff's Exhibit 8 as nine pages from a set of books entitled the *World Index of Plastics Standards,* published by the National Bureau of Standards in 1971 and stated that this publication does not use the term "flexible" to define, modify or describe acrylic sheet. However, during the colloquy leading to the admission of Exhibit 8 into evidence it was demonstrated and admitted that this publication was merely an index *listing* plastic standards and *not a compendium* of the standards themselves.

On cross-examination the witness testified that the ASTM Committee that developed technical definitions concerning plastics was composed of a balanced group which included manufacturers of plastic materials, users and university and government personnel. *He stated that the Committee could not reach an agreement on a definition of the term "flexible" and further, that there is no definition of the term "flexible" in ASTM Standard D 883 entitled "Standard Definitions of Materials Relating to Plastics"* (Plaintiff's Exhibit 12).

The witness also testified that he could not recall any one definitive test method used throughout the plastics trade to determine the flexibility of plastics.

Plaintiff's subsequent witness was Mr. John P. Dellevigne, Vice President and General Manager of the Polyvinyl Chloride

(PVC) Products Group for American Hoechst Corporation. He is responsible for the rigid PVC film and sheet portion of that firm's business.

He testified that the commercial meaning of the word "rigid" in the plastics industry is "unplasticized", meaning that the rigid material contains little or no plasticizer. He also testified that in trade terminology if an article is "rigid", it is not "flexible" and vice-versa.

Mr. Dellevigne further testified that he had read the stenographic minutes of the Sekisui case. He testified that Plaintiff's Exhibit 2 (corrugated plastic sheet) was a "rigid" sheet and not a "flexible" sheet. He stated that he did not agree with the statement of the Sekisui witness that the trade terminology of the term "flexible" is synonymous with the dictionary definition. He identified Plaintiff's Exhibit 2, merchandise similar to that in Sekisui, as "rigid" and not "flexible".

On cross-examination he stated that he is involved with PVC type plastics and that acrylic is a different plastic than PVC.

Plaintiff's next witness was Mr. Arthur H. Landrock, Subject Specialist of the Department of Defense Plastics Evaluation Center (Center). He testified that his activities at the Center are the generation, evaluation and exchange of technical information relating to plastics, from research through fabrication, with emphasis on properties and performance of plastic materials. He also helps to maintain a complete file of standards, specifications and handbooks on subject areas. Mr. Landrock is also chairman of Subcommittee D 20.91 on Editorial Review of ASTM Committee D 20 on Plastics where he is responsible for the editorial content of all standards going through the Committee.

The witness identified Plaintiff's Exhibit 1 as a "rigid" acrylic sheet and stated that such a sheet would not be classified as "flexible" in the plastics industry. He also identified Plaintiff's Exhibit 2 as a "rigid" corrugated sheet that is not "flexible". Mr. Landrock also testified that he would *not consider any plastic sheet* as "flexible".

The witness further testified that he disagreed with the testimony in the Sekisui case, supra, that the trade terminology and the dictionary definition of the term "flexible" is synonymous. He also testified that the term "flexible" as used in the preparation of a military or federal specification or standard would have the same meaning as the term used in the industry.

On cross-examination plaintiff testified that the term "flexible" is not defined in the ASTM Standard D 883: "Standard Definitions of Terms Relating to Plastics" and that the reason for this was that there was a lack of uniformity within the industry for one definition of the term "flexible". Mr. Landrock also stated that the flexibility of an article depends not only upon the modulus of elasticity of that article but also upon its thickness and stiffness.

The final witness for plaintiff was Mr. Jelte Jansons, President of Read Plastics Company which wholesales the broadest range of plastic products in the Washington, D.C. metropolitan area. He stated that he has thirty three years of direct experience in marketing acrylic products. The witness testified that he markets acrylic sheet similar to Plaintiff's Exhibit 1. He stated that in trade terminology acrylic sheets are considered "rigid" material.

Mr. Jansons testified that the test he uses to determine whether a product is "flexible" is to crumple it, and if it comes back without being broken or creased he would call it "flexible". The witness also testified that he had read the transcript in the Sekisui case and disagreed with the witnesses' statement that the trade definition and the dictionary definition are synonymous.

In identifying Plaintiff's Exhibit 3 the witness stated that it was a rigid sheet of polyvinyl chloride despite the fact that he could twist, bend and *flex* it. He also testified that his business services six states, all in the eastern United States and proximate to Washington, D.C.

Mr. Dominick Masiello, called as defendant's witness, has been a National Advisory Import Specialist since 1974 for the United

States Customs Service. Mr. Masiello has been employed by Customs since 1954. His specialization is merchandise classifiable under TSUS item 771.41 and 771.45.

Mr. Masiello testified that he was present at the offices of Almac Plastics, Inc., where he witnessed certain tests on acrylic sheet similar in construction to Plaintiff's Exhibit 1. He observed that the acrylic sheet was laid flat on the ground with one side against a wall, that two men grabbed the other end and just walked it toward the wall and made the ends touch and then let go. (R. 187) The acrylic sheet did not break nor did it craze.

On cross-examination the witness was asked to perform one similar test on Plaintiff's Exhibit 1. He, with the assistance of plaintiff's counsel, attempted this test but did not complete it because there was fear that a dangerous situation existed. However, the court notes that the acrylic sheet did bend to a great degree without breaking or crazing.

In reviewing the extensive trial record including the exhibits admitted into evidence and all other papers submitted throughout the course of this case, the court holds for the defendant.

Initially, the court recognizes that plaintiff does not attack the common meaning of the term "flexible" but rather, argues that there is a special trade terminology attendant with special tests that should control the classification of acrylic sheets. Plaintiff's witnesses testified to the existence of a trade or commercial meaning essentially attempting to establish a commercial designation despite a judicial holding and legislative intent to the contrary. Plaintiff's witness, Mr. Landrock, however, admitted on cross-examination that there was no uniformity in his committee regarding a definition of the term "flexible".

It is also a well-established principle in Customs jurisprudence that Tariff terms are to be construed in accordance with their common and commercial meanings, which are presumed to be the same. *United States v. C.J. Tower and Sons*, 48 CCPA 87, C.A.D. 770 (1961). Congress is presumed to know the language of commerce, and to have framed tariff acts so as to classify commodities according to the general usage and denomination of the trade. *Nylos Trading Company v. United States*, 37 CCPA 71, C.A.D. 422 (1949). In the interpretation of the tariff laws, words should be construed in their commonly received meaning and popular sense, in the absence of contrary legislative intent or proof of a commercial designation. *Ozen Sound Devices v. United States*, 67 CCPA 67, C.A.D. 1246, 620 F.2d 880 (1980); *United States v. Corning Glass Works*, 66 CCPA 25, C.A.D. 1216, 586 F.2d 822 (1978). Tariff acts are not drafted in terms of science, but in terms of commerce, which is *presumptively* that in common use, and, in the absence of a contrary legislative intent, tariff terms are not to be construed according to their scientific meaning, where that meaning differs from the common or commercial meaning. *United States v. Sandoz Chemical Works, Inc.*, 46 CCPA 115, C.A.D. 711 (1959).

In view of the foregoing, plaintiff, to succeed in this action, must demonstrate that there is a legislative intent contrary to the presumption of interpretation under common meaning or prove that there exists a definite, uniform and general commercial designation resulting from established usage in commerce and trade, *Maddock v. Magone*, 152 U.S. 368, 14 S.Ct. 588, 38 L.Ed. 482 (1894), that is not contrary to a manifest legislative intent.

The acrylic sheets in issue were classified pursuant to TSUS item A771.41. The presumption is, therefore, that they are flexible sheets according to the superior headnote. There is no use of the term "rigid" nor any specific definition of the term "flexible". Absent such definition, the presumption is that "flexible" is to be used and interpreted by its common meaning. *United States v. C.J. Tower and Sons, supra*. In *Sekisui Products, Inc. v. United States, supra*, the Customs Court stated that the merchandise there in issue (similar to Plaintiff's Exhibit 2 in the instant action) was properly classifiable as "other flexible plastic

sheets". The court further found that the common meaning of the term "flexible" was definitively stated in *Webster's Third New International Dictionary of the English Language,* Unabridged (1961) as:

> 1. capable of being flexed: capable of being turned, bowed, or twisted without breaking. * * * Syn. Elastic, resilient, springy, supple: Flexible is applicable to anything capable of being bent, turned, or twisted without being broken and with or without returning of itself to its former shape.

This common meaning definition of the term "flexible" has not been altered since *Sekisui* and is applicable to the definition of "flexible" as used in this action.

Equally important is the fact that Congress has chosen not to amend the law to define "flexible" in a commercial designation even though made specifically aware of the *Sekisui* decision and its ramifications. In a letter dated July 13, 1977, Mr. G.R. Dickerson, the then Acting Commissioner of Customs, apprised Congressman Charles A. Vanik, Chairman, Sub-Committee on Trade, Committee on Ways and Means, of the broad nature of the flexibility test under *Sekisui* and, his desire for a quantitative test based on the modulus of elasticity in flexure which would be easier to administer.[2] Congress subsequently modified Schedule 7, Part 12, Subpart B, when it amended the language of Headnote 2 (iv) (D) thereunder.[3] However Congress although fully apprised of Customs request for a commercial designation based on a quantitative test of the term "flexibility" chose to leave it in its present state.

It is evident that Congress had both actual and constructive notice of the *Sekisui* decision prior to the 1977 changes in Schedule 7, Part 12, Subpart B. Thus, there exists here a classic example of legislative ratification of a judicial construction. Under this doctrine, the courts have given *controlling effect* to the fact that the legislature is presumed to have approved of the judicial construction of a tariff provision when the provision is reenacted in the same or substantially the same language. *United States v. Astra Trading Corp.,* 44 CCPA 8, C.A.D. 627 (1956). This is especially true where the legislature has had both actual and constructive knowledge of the judicial construction. *United States v. Loffredo Bros., Gehrig Hoban & Co., Inc.,* 46 CCPA 63, C.A.D. 697 (1958).

In sum, it is apparent that Congress did not intend to define the term "flexible" in a commercially designated sense or, in any manner attempt to change its common meaning despite the fact that Congress was fully informed of the ramifications of the *Sekisui* case.

Plaintiff has also failed to prove that the term "flexible" has a commercial designation based on a trade understanding of the term "flexible" which differs from its common meaning and is not in conflict with clearly manifested legislative intent.

■■■ In order to establish a commercial designation of a tariff term the burden falls upon the party seeking to establish the commercial designation to demonstrate that such tariff term has a meaning which is general (extending over the entire country), definite (certain of understanding), and uniform (the same everywhere in the country). *S.G.B. Steel Scaffolding & Shoring Co., Inc. v. United States,* 82 Cust.Ct. 197, C.D. 4802 (1979). It is a well-established rule that "before the plain understanding of a term can be deviated from it must be shown by plenary proof to have a different import in trade and commerce." *United States v. Wells, Fargo & Co.,* 1 Ct.Cust.Appls. 158, 161, T.D. 31211 (1911); *Excelsior Import Associates, Inc. v. The United States,* 66 CCPA 1, C.A.D. 1212, 583 F.2d 513 (1978). The rule was intended to apply to cases where the trade designation was so universal and so well understood that *Congress,*

---

**2.** A verbatim typewritten copy of this letter is attached as Appendix I to this decision.

**3.** This amendment provided that film, strips and sheets had to be *usefully* processed rather than *merely* processed to be classified under Subpart B. Pub.L. 95–160, § 3, 91 Stat. 1271 (Nov. 8, 1977).

*and the trade,* were supposed to have been fully acquainted with the practice at the time the law was enacted. *Jas. Akeroyd & Co., et al. v. United States,* 15 Ct.Cust. Appls. 440, T.D. 42641 (1928).

In reviewing the trial testimony the court finds that two key witnesses for plaintiff, Messrs. Reinhart and Landrock, testified that they held prominent positions in the American Society of Testing Materials (ASTM). Mr. Reinhart was chairman of a group developing definitions of terms for standards applicable to the plastics industry, and Mr. Landrock was chairman of a subcommittee of ASTM on Editorial Review where he was responsible for the editorial content of all standards going through ASTM Committee D 20 on Plastics. Both witnesses uncategorically testified that ASTM has never developed or published a definition of the term "flexible". Further, both state that the reason for the lack of a standard definition of the term "flexible" is that the ASTM Committee, despite continuous discussion, *could not agree* upon a specific definition of that term and that there *was a lack of uniformity within the industry for a singular definition thereof.*

■ There is also a dichotomy as to the testing methods to be employed in determining whether acrylic sheet is "flexible". Messrs. Reinhart and Landrock indicate a scientific approach while plaintiff's witness Mr. Jansons, a wholesaler of plastic products in approximately six states regionally, merely indicated that his test was to "crumple" the plastic material and, if it did not break or crease, it was "flexible". A commercial designation is not established where there is a conflict in the testimony of trade witnesses as to the commercial meaning of a term. *S.G.B. Steel Scaffolding & Shoring Co., Inc. v. United States, supra.*

Plaintiff's witnesses speak in terms of "rigid" as applied to plastic sheets. Interestingly, Congress does not employ this term in the applicable TSUS items although they could have readily done so.

Since there appears to be a lack of uniformity among plastics experts nationwide (indeed, ASTM a leader on developing definitions could not agree upon a definition for "flexible") and conflict as to actual testing methods, scientific versus a "hand" approach, plaintiff has failed to demonstrate a general, uniform and definite definition of a commercial designation for acrylic sheet.

■ Equally important is the fact that plaintiff has not demonstrated that the legislative intent clearly does not lie in the common meaning of the term "flexible". To prove a commercial designation plaintiff must not only show the trade usage itself but must overcome the intention of Congress where that intention is clearly manifest. *Cadwalader v. Zeh,* 151 U.S. 171, 14 S.Ct. 288, 38 L.Ed. 115 (1894); *Florsheim Shoe Company, Division of Interco, Inc. v. United States,* 71 Cust.Ct. 187, C.D. 4495 (1973).

■ In conclusion, plaintiff has failed to demonstrate a contrary legislative intent other than the common meaning of the term "flexible". Plaintiff has also failed to show through plenary proof a definite, general and uniform commercial designation.

■ What plaintiff attempts to accomplish is to have this court change the clear meaning of a legislative enactment. It is a longstanding and well-established precedent that the courts have no power to legislate. *Louisville & Nashville R.R. Co. v. Mottley,* 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911). Courts do not sit to revise legislative action or determine the wisdom of statutes. *National Mutual Insurance Co. v. Tidewater Transfer Co., Inc.,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). It is beyond the sphere of judicial authority to alter, modify, or change a law enacted by Congress even though it appears that the law is incorrect. *Dakota Central Telephone Co. v. South Dakota,* 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910 (1919). When Congress has spoken it is the function of the courts to interpret and not to legislate nor to pass upon the economic wisdom of Congress. *Federal Trade Comm. v. Simplicity Pattern Co.,* 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959).

Defendant, on the other hand, has persuasively demonstrated that Congress was fully apprised both constructively and actually of the test standards enunciated under the *Sekisui* case. In fact, the then *acting* Commissioner of Customs, *in response to an inquiry from a Member of Congress,* suggested that Congress adopt a test similar to the one plaintiff urges this court to adopt. That specific subpart of the law was modified but no change or modification occurred as to the term "flexible". This, of course, must speak for itself. If plaintiff desires a change in the current law it must go the appropriate source, the legislative branch of government.

Accordingly, the classification of the District Director of Customs at the Port of New York is sustained, and the complaint of plaintiff is, in all respects, dismissed.

Judgment will enter accordingly.

Appendix 1

This correspondence reads as follows:

July 13, 1977

The Honorable
Charles A. Vanik
Chairman, Subcommittee on Trade
Committee on Ways and Means
House of Representatives
Washington, D.C. 20515

Dear Mr. Chairman:

In a letter dated June 14, 1977, you requested that in order to clarify the dutiable status of acrylic sheets, we provide your committee with an explanation of our practice with respect to the term "flexibility" as it applies to acrylic sheets classifiable under item 771.42, Tariff Schedules of the United States (TSUS).

Our practice with respect to the determination of whether acrylic sheets are flexible so as to be within the purview of item 771.42, TSUS, is guided by the case of *Sekisui Products Inc. v. United States,* 63 Cust.Ct. 123, C.D. 3885 (1969). In that case the Government contended that the plaintiff had failed to prove that the corrugated plastic panels in issue were flexible. In response to that contention the court stated:

As previously noted the imported panels can be bent into circular form along the corrugations, after which they return to their original shape. Likewise, the panels—with some difficulty—can be bent width-wise against corrugations until both ends join. When released after such bending, the panels will again reassume their original shape, but show evidence of creasing. These characteristics clearly place the imported panels within the accepted definition of the word "flexible." The fact that it is more difficult to bend the importations against the corrugations scarcely detracts from the fact that they are flexible. There is certainly no requirement that for an article to be flexible it must be capable of being bent, bowed or twisted in every direction. A bow, for instance, used for archery purposes is obviously flexible—that being the very purpose of its construction. Yet is would be practically impossible to flex or bend it in more than one direction. Indeed, even copper tubing has been held to be flexible. *Hansel v. United States,* 2 Cust.Ct.Appls. 221, T.D. 31951 (1911). A fortiori, the imported panels here are manifestly flexible. Examination of the samples, without more, makes this apparent. For such examination shows that they are "springy," "elastic," "resilient" and "supple"—which are the synonyms for the term "flexible," given in the dictionary definition.

The court's test is exceptionally broad and has caused some administrative difficulty. Further, it appears that as a result of the court's decision some merchandise is being treated as flexible for tariff purposes which was not so regarded by the framers of the tariff schedules.

A quantitative test, based on the modulus of elasticity in flexure would be easier to administer and lead to more consistent results.

We would be happy to discuss this matter further at your convenience.

Sincerely yours,
(Signed) G.R. Dickerson
Acting Commissioner of Customs