(C.D. 4847)

RSMC INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 77–4–00572

(Decided March 12, 1980)

*Doherty and Melahn* (*William E. Melahn* at the trial and on the briefs) for the plaintiff.

*Alice Daniel*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Saul Davis* at the trial and on the brief), for the defendant.

MALETZ, Judge: The problem in this case is to determine the proper tariff classifications of items invoiced as "E–22 champagne goblets" that were exported from Spain and entered at the port of Boston in April and May 1973.

The merchandise was classified by Customs under item 653.75, TSUS, as articles of metal, coated or plated with gold, and assessed duty at the rate of 20 percent ad valorem. Plaintiff claims the merchandise is properly classifiable under item 653.80, TSUS, as articles of metal, coated or plated with silver, dutiable at the lesser rate of 8.5 percent ad valorem.

### THE STATUTES

*Schedule 6, part 3, subpart F, TSUS*

Articles not specially provided for of a type used for household, table, or kitchen use; * * * all the foregoing and parts thereof, of metal:

\*　　\*　　\*　　\*　　\*　　\*　　\*

*Classified under:*

| | | |
|---|---|---|
| 653.75 | Coated or plated with gold_____ | 20% |

*Claimed under:*

| | | |
|---|---|---|
| 653.80 | Coated or plated with silver_____ | 8.5% |

*General interpretative rules:*

10(c) An imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(ii) comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

10(d) If two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest, and, should the highest original statutory rate be applicable to two or more of such descriptions, the article shall be subject to duty under that one of such descriptions which first appears in the schedules; * * *

### QUESTION PRESENTED

The question to be decided is whether the imported goblets are classifiable as articles coated or plated with gold or as articles coated or plated with silver.

### THE FACTS

The goblets in question are 6½ inches in height, have a bowl diameter of 4 inches, and are silver in color save for the interior of the bowl which

is gold in color. Each base goblet was formed out of an alloy that was then plated with nickel over the entire surface. The entire surface of the base goblet was then coated or plated with silver following which the inside of the bowl was coated or plated with gold.

The thickness of the gold layer averages 0.72 millionths of an inch, while the thickness of the silver layer averages 0.99 millionths of an inch. The weight of the gold layer is approximately 8 millionths of a pound, while the weight of the silver layer is approximately 17 millionths of a pound so that the silver weighs about twice as much as the gold. The total surface area of the gold layer is 16 square inches, while the total surface of the silver layer amounts to approximately 45 square inches. Hence, the goblet contains almost three times as much silver area as gold area. However, based on the average price of gold and silver in the United States in 1973, the gold portion of the goblet was worth 10 times as much as the silver portion.

In 1957, the Federal Trade Commission adopted a regulation prescribing trade practice rules governing the sales or offers for sale of jewelry articles. This regulation reads as follows (16 CFR 23.22):

§ *23.22   Misrepresentation as to gold content*

(a) It is an unfair trade practice to sell or offer for sale any industry product under any trade or product name or designation or other representation having the capacity and tendency or effect of deceiving purchasers or prospective purchasers thereof as to the presence of gold or gold alloy in the product, or as to the quantity or fineness of gold alloy, contained in the product, or as to the fineness, thickness, weight ratio, or manner of application of any gold or gold alloy plating, covering, or coating on any surface of any industry product or part thereof.

(b) The following practices are among those to be regarded as inhibited by paragraph (a) of this section:

\*     \*     \*     \*     \*     \*     \*

(5) Use of the term "gold electroplate," or "gold electroplated," as descriptive of any industry product or part thereof, unless such product or part is plated or coated with gold or a gold alloy and such plating or coating is of such karat fineness, thickness, and extent of surface coverage that the use of the term will not have the capacity and tendency of deceiving purchasers or prospective purchasers.

\*     \*     \*     \*     \*     \*     \*

(c) Markings and descriptions of industry products or parts thereof will be considered as meeting the requirements of this section when in conformity with the following:

\*     \*     \*     \*     \*     \*     \*

(3) An industry product or part thereof, all significant surfaces on which there has been affixed by an electrolytic process a coating or plating of gold, or of a gold alloy of not less than 10 carat fineness, the minimum thickness throughout of which is

equivalent to 7 millionths of an inch of fine gold, may be marked or described as "gold electroplate" or "gold electroplated." When the coating or plating meets the minimum fineness, but not the minimum thickness, above specified, the marking or description may be "gold flashed " or "gold washed," * * *

With respect to the goblets here in issue, the thickness of the gold surface of the interior of the bowl, as noted before, is only 0.72 millionths of an inch and therefore is only 10 percent of the minimum 7 millionths of an inch thickness required by the FTC regulation before an article may be represented as "gold electroplate" or "gold electroplated." Because the thickness of the gold covering is only 0.72 millionths of an inch, the imported goblets may not under this FTC rule be represented to the public as "gold electroplated" but may be represented as "gold flashed" or "gold washed." In that circumstance, goblets such as those involved here were represented in 1973 by plaintiff for sale to the public as "silver plated toasting goblets * * * with gold color lining." Competitors of plaintiff advertised similar goblets variously as "toasting goblets * * * gold lined"; "toasting goblets * * * gilt lined";[1] or "silver goblets with gold flashed bowls."

In correspondence between plaintiff and its supplier in Spain during the period 1969–71, the imported goblets were consistently referred to as "gold plated." Also plaintiff's own inventory list described the importations as "champagne goblet goldplated interior." In addition, the goblets were referred to as "gold plated" by concerns engaged in electroplating them.

## Opinion

With these facts in mind, there is no question that the imported goblets are coated or plated with gold within the common meaning of item 653.75. Indeed, the sole criterion used by our appellate court in determining whether an article is classifiable under a tariff provision requiring the article to be "plated with gold" was whether the article, in fact, contained a gold plating and whether the gold plating was more than an "insignificant" or "negligible" portion of the article. *Saji & Kariya Co.* v. *United States*, 9 Ct. Cust. Appls. 78, T.D. 37945 (1919); *United States* v. *N. Shure Co.*, 21 CCPA 296, T.D. 46818 (1933); *Tuska* v. *United States*, 5 Ct. Cust. Appls. 506, T.D. 35153 (1915). And in the present case, there is no dispute that the imported goblet was coated or plated with gold on the inside of the bowl and that this gold plating was more than insignificant or negligible.

Plaintiff argues, however, that the term "coated or plated with gold" has had by reason of adoption of a Federal Trade Commission

---

[1] Webster's Third International Dictionary (1963 ed.) defines the adjective "gilt" as "covered with gold or gilt." The noun "gilt" in turn is defined in Webster's as "gold, or that which resembles gold, laid on the surface of a thing."

regulation in 1957 a commercial designation different from its common meaning which precludes the articles here in issue from being classified as gold coated or plated.[2] Put otherwise, plaintiff's claim is (1) that the effect of the 1957 FTC regulation was to establish a commercial designation for gold coated or plated articles which prescribes a minimum thickness requirement that must be met before an article may be represented as gold coated or plated; and (2) that since the articles here in issue did not contain this minimum thickness, the articles are not classifiable as gold coated or plated.

It is, of course, basic that the common and commercial meaning of tariff terms are presumed to be the same and the party who asserts that a tariff term has a meaning in the trade and commerce of the United States which is different from its common meaning has the burden of proof. This rule of commercial designation "was intended to apply to cases where the trade designation is so universal and well understood that the Congress and all the trade are supposed to have been fully acquainted with the practice at the time the law was enacted." *Jas. Akeroyd & Co.* v. *United States*, 15 Ct. Cust. Appls. 440, 443, T.D. 42641 (1928). Thus, "(c)ommercial designation must be the result of established usage in commerce and trade and must be definite, uniform, and general, and not local, partial, or personal. * * * Before the plain understanding of a term can be deviated from, it must be shown by plenary proof to have a different import in trade and commerce which is fully and completely understood and accepted throughout the United States by all those dealing wholesale in that class of goods. * * *." Sturm, *A Manual of Customs Law* (1974), page 210.

In this setting, the court concludes for the reasons that follow that plaintiff's reliance on the FTC regulation is misplaced, and that in any event plaintiff failed to prove a commercial designation that would preclude classification under item 653.75.

First, there is no indication anywhere in the legislative history of the TSUS, in general, or item 653.75 and its superior heading, in particular, which would disclose that Congress intended that the FTC regulation would be determinative of the scope of any provision in the TSUS. See, e.g., *A. N. Deringer, Inc.* v. *United States*, 63 CCPA 37, 42, C.A.D. 1161, 524 F. 2d 1215, 1220 (1975).

Second, the TSUS does not distinguish between "coated or plated with gold" and "coated or plated with silver" (items 653.75 and 653.80) except for the precious metal utilized. The FTC regulation,

---

[2] A descriptive term, as well as an eo nomine designation, in a tariff act is susceptible of proof of commercial designation unless it was the intent of Congress to restrict the meaning of the term used to its common meaning. *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, 292, T.D. 41908 (1926); *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, 279, T.D. 38680 (1920); *United States* v. *Iwai & Co., Ltd.*, 29 CCPA 60, 62, C.A.D. 171 (1941).

on the other hand, distinguishes between silver plated articles and gold plated articles by prescribing a thickness requirement for gold plating and not prescribing a thickness requirement for silver plating. Clearly, Congress did not adopt the FTC provision regarding plating since the TSUS contains no thickness requirements for either gold or silver.

What is more, the fact that under the FTC regulation certain requirements must be met before articles may be offered as gold plated does not ipso facto establish a commercial designation for the terms gold coating or plating. Proof must still be presented by plaintiff to show that such requirements were fully and completely understood and accepted by all those dealing in wholesale in that class of goods and that such requirements were definite, uniform, and general. Plaintiff, however, has failed to satisfy its burden in this respect.

For one thing, the record is clear that the change mandated by the FTC regulation did not become definite, uniform, and general in the trade. For example, in the period immediately antedating the importations at issue, plaintiff itself and its foreign supplier consistently referred to the imported goblets as "gold plated." Also, the trade advertised goblets similar to those involved here as "silver goblets with gold flashed bowls" or as "toasting goblets * * * gilt lined"—and these are simply other ways of referring to the articles as coated with gold. Further, electroplaters within the trade have consistently referred to articles such as the ones involved here as "gold plated." Thus, in the last analysis, plaintiff has failed to prove a uniform and recognized commercial designation that precludes classification such as the importations at bar from the status of "coated or plated with gold."

Plaintiff next argues that the rule of "relative specificity," contained in General Interpretative Rule 10(c), controls the competition between item 653.75 (which covers articles coated or plated with gold), and item 653.80 (which covers articles coated or plated with silver), and that item 653.80 is more specific. However, for the reasons set out below, it is concluded that both provisions are equally specific and that General Interpretative Rule 10(d) therefore applies.

Under the rule of "relative specificity" of tariff provisions as contained in General Interpretative Rule 10(c), where there is competition between two or more tariff provisions for classification of a particular article, and both tariff provisions encompass that article, it is the provision whose requirements are more difficult to fulfill which controls classification. See *Humphreys* v. *United States*, 56 CCPA 67, 69, 71, C.A.D. 956, 407 F. 2d 417, 419, 420 (1969).

Clearly, the particular terms of the tariff provisions in issue are measured for relative specificity rather than the composition of the merchandise in issue. With this basic rule in mind, examination of

the two provisions involved (items 653.75 and 653.80) discloses that they are identical except for the particular precious metal used as the plating material. Therefore, it is apparent that General Interpretative Rule 10(c) does not resolve the classification issue since the requirements of both items 653.75 and 653.80 are equally difficult to fulfill.

Accordingly, General Interpretative Rule 10(d) controls for the reason that items 653.75 and 653.80, TSUS, are "equally applicable" to the imported goblets inasmuch as the goblets are "coated or plated" with both gold and silver.

In this circumstance, General Interpretative Rule 10(d) mandates classification under the provisions which contain the highest original statutory rate of duty (the col. 2 rate). And since item 653.75 applies the highest original statutory rate of duty (65 percent versus 50 percent for item 653.80), General Interpretative Rule 10(d) requires classification under item 653.75.

For the foregoing reasons, the classification under item 653.75 is affirmed and the action is hereby dismissed.