KEUFFEL & ESSER COMPANY, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 80-1-00192

Before RAO, *Judge.*

(Dated June 22, 1984)

*Lionel N. White* for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office *(Michael P. Maxwell* at the trial and on the brief) for the defendant.

RAO, *Judge:* This civil action involves the proper classification of merchandise imported from France through the port of New York. The merchandise comprises a sheet of paperboard or cardboard, approximately 0.7 mm. 232 mm. by 120 mm. and a sheet of styrene plastic film, of similar proportions, on the rear surface of which are adhered printed letters and symbols which are overcoated with a layer of a waxy, low-tack adherent composition. The film sheet is permanently affixed along its edges to the paperboard sheet and the paperboard sheet is through-scored approximately ½ inch from its periphery so that its center, which protects the printed surface, can be removed when the merchandise is in use.

When the merchandise is in use, the letters and symbols are transferred from the printed sheet to a receiving surface or sheet by burnishing the face of the styrene film directly over the letter or symbol desired to be transferred. This may be done with a stylus or with a pencil or other pointed instrument.

The merchandise was classified by the U.S. Customs Service (Customs) as "Articles not specially provided for, of rubber or plastics: * * * Other" under item 774.60 Tariff Schedules of the United States (TSUS) at a duty rate of 8.5 percent ad valorem.

It is plaintiff's claim that the merchandise should be classified under item 273.75 TSUS as "Decalcomanias * * * Other: Not backed with metal leaf" at a duty rate of $0.10 per pound. In essence, plaintiff claims that the merchandise is *eo nomine* decalcomanias, as that term is understood commercially and regardless of the traditional requirement that decalcomanias be placed on paper carriers.

Defendant, on the other hand, relies on lexicographic definitions of word "decalcomania" and on this court's previous decisions in *M. H. Garvey* v. *United States,* 65 Cust. Ct. 434, C.D. 4119 (1970) and 58 Cust. Ct. 530, C.D. 3040 (1976). Both the lexicographic definitions and the court's decisions in the *Garvey* cases require that the

letters and symbols or designs be placed on a carrier of paper for decalcomanias.

Plaintiff relies on the testimony of two witnesses and the introduction into evidence of U.S. patents for transfer sheets similar to the imported merchandise to establish that the common and commercial meaning of the word decalcomania currently includes transfer sheets composed of plastic as well as those of paper.

The first witness, Edward Kaprelian, is a consultant in mechanical and electronic design of equipment and in process optics, imaging and graphic arts. He has a degree in mechanical engineering and has studied optics and physics, and has had wide experience in the field of graphic arts, including patent applications. He was vice-president of Keuffel & Esser Company from 1968 to 1973, where his responsibilities included supervision of transfer lettering and all research and development.

Mr. Kaprelian was qualified as in expert in the areas of graphic arts and decalcomanias, as well as in the preparation and review of patent applications (R. 16, 17). He testified that there are two types of decalcomanias, wet and dry. In dry decals, the material to be transferred has been applied to the carrier sheet in such a way that it can be easily released onto a receiving sheet by the application of pressure (R. 59). The wet decal differs from this only in that the material to be transferred is held onto the carrier sheet by a water soluble adhesive and requires wetting of the carrier sheet to effectuate release of the design, letters or symbols. While wet decalcomanias have been in use for more than 100 years, dry decals have been used for approximately 30 years.

In Mr. Kaprelian's opinion the word decalcomania encompasses all types of transfer sheets in which an image is transferred from a carrier sheet to another surface, and the carrier sheet can be of any material that is transparent or translucent (R. 61). He disagrees with lexicographic definitions in *Webster's New World Dictionary of the American Language,* 2nd Edition (1977), and in *The Dictionary of Paper,* 4th Edition (1980), which limit decalcomanias to those for which the carrier sheet is of paper, as being incomplete in that they do not take into consideration that the state of the art now includes decalcomanias with plastic carrier sheets.

Plaintiff's second witness, Richard L. Wayne, is a principal in an advertising agency and has used transfer cards similar to the merchandise at issue in his work. In his opinion the merchandise is a dry decalcomania. Mr. Wayne testified that there is no difference between wet and dry decalcomanias except for the method of transferring the image; the end result in both types is the same (R. 91).

The patents introduced into evidence were for transfer sheets (also referred to as decalcomanias in the patents) for which the transfer sheets were paper or plastic. Mr. Kaprelian agreed with the statements contained in the patents that the carrier sheets could be of paper or plastic composition.

The United States relied on the testimony of two witnesses: Mr. Robert M. Kennedy and Mr. Steven Berczuk. Mr. Kennedy was qualified as an expert witness in the area of decalcomanias. It was his opinion that the term decalcomania properly only applies to water slide off merchandise where the carrier is of paper (R. 100–101). It was also his opinion that the merchandise in question would not be considered a decalcomania because it is not durable and cannot be applied rapidly.

Mr. Berczuk was the Customs import specialist for paper and printed matter between 1970 and 1981. He testified that the merchandise is not considered a decalcomania because it is on a plastic carrier sheet and not on paper, and because of the decisions in the previous *Garvey* cases.

In *Garvey* II (the more recent decision), the court considered marking devices printed on rubber which are placed by hand on vulcanized hose. During vulcanization the marking device becomes an integral part of the hose through a combination of heat and pressure. The court denied the plaintiff's protest, holding that the merchandise was not decalcomanias within the *eo nomine* meaning of that word as used in the tariff schedules and held that "no finding could be made [on the record before the court] that at the date of the enactment of the Tariff Schedules of the United States, the term 'decalcomanias' was known uniformly and generally throughout the United States to include such articles not necessarily made of paper, but which by usage and general appearance perform the same function as paper decalcomanias."

The court then found plaintiff's evidence on the question of commercial designation to be wholly insufficient to meet the standard established by the cases.

Commerical designation must be the result of established usage in commerce and trade and must be definite, uniform and general, and not local, partial or personal. *Maddock* v. *Magone,* 152 U.S. 368, 14 S. Ct. 588, 38 L.Ed. 482; *United States* v. *Salomon,* 1 Ct. Cust. Appls. 246, T.D. 31277 (1911); *United States* v. *Burlington Venetian Blind Co.,* 3 Ct. Cust. Appls. 378, T.D. 32967 (1912).

Before the plain understanding of a term can be deviated from, it must be shown by plenary proof to have a different meaning in trade and commerce which is fully and completely understood and accepted throughout the United States by all who deal wholesale in that class of goods. *United States* v. *Wells, Fargo & Co.,* 1 Ct. Cust. Appls. 158, T.D. 31211 (1911). Where it is established that a tariff term has a meaning in trade or commerce that is different from the common meaning and is uniform, definite and general, such meaning will be adopted, unless a contrary intention of Congress is manifest. *Florsheim Shoe Co., Division of Interco, Inc.* v. *United States,* 71 Cust. Ct. 187, C.D. 4495 (1973).

As to whether the doctrine of *eo nomine* designation applies in this case, it is well established that tariff terms will embrace mer-

chandise not known to commerce at the time of their enactment, provided the new article possesses an essential resemblance to the one named in the statute. *Sears, Roebuck & Co.* v. *United States,* 64 CCPA 79, C.A.D. 701 (1959). In *Davies Turner & Co.* v. *United States,* 45 CCPA 39, C.A.D. 669 (1957), our appellate court stated:

> The meaning of *eo nomine* provisions is to be determined as of the date of enactment but, when so determined, that meaning will embrace all subsequently created articles which fall within it. Tariff acts, therefore, are made for the future in the sense that they embrace articles not in existence at the time of enactment, but the meaning of words used in such acts is fixed at the time of enactment and does not fluctuate as the meaning of words subsequently vary.

Further, in *Smillie & Co.* v. *United States,* 12 Ct. Cust. Appls. 365, T.D. 40520 (1924), the court stated:

> The rule [that the meaning of an *eo nomine* provision of a tariff act is that which it had at the time of enactment], of course, does not operate to exclude articles which are not known at the time of the passage of the act, but which come into being later. *As to all such articles the statute will be held to apply if the articles possess an essential resemblance to the ones named in the statute in those particulars which the statute established as the criteria of the classification.* [The court's emphasis]

An *eo nomine* designation in a tariff act is susceptible to proof of commercial designation unless it was the intent of Congress to restrict the meaning of the term used to its common meaning. *La Manna, Azema & Farnan* v. *United States,* 14 Ct. Cust. Appls. 289, T.D. 41908 (1926); *United States* v. *Iwai & Co., Ltd.,* 29 CCPA 60, C.A.D. 171 (1941).

While the court in *Garvey* II explored Congressional intent through the legislative history as encompassed in the 1929 and 1948 *Summaries of Tariff Information* and the 1960 *Tariff Classification Study* and found no indication that Congress intended to include within the term decalcomania articles other than those with paper carriers, it did not decide that it was the intent of Congress *to restrict* the meaning of the term used, decalcomania, to its common meaning. The court discussed the "essential characteristics" test enunciated in *Smillie & Co., supra,* and held that the *common meaning* of "decalcomania" excludes articles not having a paper carrier sheet. It did not, however, hold that if the commercial designation of decalcomanias were found to apply to merchandise with other than paper carrier sheets, the *eo nomine* designation would not apply. In fact, the court held that plaintiff's quantum of proof was insufficient, indicating that had plaintiff met its burden of proof, the court would have considered commercial designation.

Plaintiff herein has not established commercial designation of the term "decalcomania" to include merchandise with plastic carrier sheets, although it attempted to do so. The burden of proof rests on the party claiming a commercial designation different from the common meaning. It must be established that in the trade and commerce of the United States the term in question has a general, uniform and definite meaning and that it is uniform everywhere in the country. *United States* v. *Georgia Pulp & Paper Manufacturing Co.*, 3 Ct. Cust. Appls. 410, T.D. 32998 (1912); *Swift & Co., a Corporation* v. *United States*, 27 CCPA 181, C.A.D. 83 (1939). Proof must be offered through persons engaged in buying or selling the merchandise at wholesale in the United States, or through persons who know, by their own experience or knowledge, the meaning of the designation applied to the merchandise by those who buy and sell at wholesale. *Daniel Green Shoe Co.* v. *United States (Trans World Shoe Corp., Party in Interest)*, 58 Cust. Ct. 7, 15, C.D. 2868, 262 Fed. Supp. 375 (1967), appeal dismissed, 54 CCPA 143 (1967).

A commercial designation is not established where there is a conflict in the testimony of trade witnesses as to the commercial meaning of the term. *S.G.B. Steel Scaffolding & Shoring Co.* v. *United States*, 82 Cust. Ct. 197, C.D. 4802 (1979). Here, defendant's expert witness testified that within his knowledge, the term "decalcomania" is limited to merchandise where the carrier sheet is of paper.

Nor is commercial designation established by language in patents filed with the United States Patent Office where the evidence presented does not establish that such designation has become definite, uniform and general in the trade. *Cf. RSMC, Inc.* v. *United States*, 84 Cust. Ct. 96, C.D. 4847 (1980).

Based on the present record, the plaintiff has failed to sustain its burden of proof in establishing that the merchandise is covered in the common meaning of the term "decalcomania" and that the commercial designation is different from the common meaning. With respect to proof of the fundamental elements of commercial designation, the record is limited to the experience of Mr. Kaprelian in the research and development of plastic carrier transfer sheets and in the preparation and interpretation of patents in which such transfer sheets are used or suggested as appropriate for use in dry transfers. Mr. Wayne's experience with decalcomanias was limited to personal use of transfer sheets in his advertising agency. Taken together, the testimony of these witnesses did not establish a definite, general and uniform trade understanding in the United States of the term "decalcomania" which includes merchandise where the carrier sheet is of plastic.

For all the foregoing reasons, it is the determination of this court that the presumption of correctness attaching to the classification by Customs has not been overcome.

The action is dismissed. Judgment will enter accordingly.